IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:22-CV-307-FDW-DCK

| | |
|---|---|
| CHRISTOPHER LAMIE and AMABEL LIN, on behalf of themselves and all others similarly situated, )<br>)<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>LENDINGTREE, LLC, )<br>)<br>Defendant. )<br>) | **STIPTULATED ESI PROTOCOL ORDER** |

**THIS MATTER IS BEFORE THE COURT** on the parties' "Joint Motion For Entry Of Protective Order And ESI Protocol" (Document No. 33) filed February 14, 2023. This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and immediate review is appropriate. Having carefully considered the motion and the record, the undersigned will grant the motion and enter the parties' proposed ESI Protocol as follows.

Plaintiffs Christopher Lamie and Amabel Lin ("Plaintiffs") and Defendant LendingTree, LLC ("Defendant"), by and through their undersigned counsel, hereby stipulate and agree to this Stipulation and Order Regarding Discovery of Electronically Stored Information.

### A. PURPOSE

This Stipulated Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

B.  DEFINITIONS

  1. **"Action"** refers to the above-captioned litigation.

  2. **"Document"** is defined by, synonymous in meaning with, and equal in scope to the usage of the term in Federal Rules of Civil Procedure 26 and 34. For avoidance of doubt, the term "Document" includes Hard Copy Documents and ESI. A draft or non-identical copy is a separate Document within the meaning of this term.

  3. **"ESI"** is an abbreviation of "electronically stored information" and has the same meaning it has in Federal Rules of Civil Procedure 26 and 34(a)(1)(A), and refers to computer-generated information or data of any kind, stored in or on any storage media.

  4. **"Extracted Text"** means the text extracted from a Document, including all header, footer, redlines, comments, notes, and document body information.

  5. **"Hard Copy Document"** means a Document that was maintained in paper or other tangible form.

  6. **"Load File"** means an electronic file containing information identifying a set of paper-scanned images, processed ESI, or Native Format files, as well as the corresponding Extracted Text or OCR text files, and containing agreed-upon extracted or user-created Metadata as outlined in Exhibit A, as well as information indicating unitization (i.e., document breaks and document relationships such as those between an email and its attachments). A Load File is used to import all image, native, and text files and their corresponding production

information into a document database.

7. **"Metadata"** means information or data about data, and includes, without limitation: (i) all other text and information other than Extracted Text; (ii) information embedded in or associated with a native file that is nor ordinarily viewable or printable from the application that generated, edited, or modified such native file; (iii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system; and (iv) structured information about Documents that is created by the file system or application, embedded in the Documents, and sometimes modified through ordinary business use.

8. **"Native Format"** means the format of a Document in the application in which such Document was originally created or used by the Producing Party in the usual course of business and in its regularly conducted activities.

9. **"OCR"** means the optical character recognition technology used to read paper Documents or electronic images of Documents and output such Documents to a searchable text format.

10. **"Party"** means any named plaintiff or defendant in this Action.

11. **"Producing Party"** means any Party that produces Documents in this Action.

12. **"Requesting Party"** means any Party who serves a discovery request in this Action.

13. **"Tagged Image File Format"** or **"TIFF"** means the CCITT

Group IV graphic file format for storing bit-mapped images of Documents. For files produced as TIFF images, each page of a Document will be electronically served as an image file.

**C. GENERAL PRINCIPLES**

1. The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter.

2. Nothing in this Stipulated Order shall be interpreted to require disclosure of information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. By entering this Stipulated Order, a Party is not giving up any right to review its Documents for responsiveness, privilege, confidentiality or any other reason.

3. Nothing in this Stipulated Order waives or limits any Party's right to object to the responsiveness, production, discoverability, possession, custody, control, authenticity, admissibility, or confidentiality of any particular Documents or ESI.

4. Except as the Court may otherwise order, the costs of producing Documents pursuant to this Stipulated Order will be borne by the Producing Party.

5. The Parties will meet and confer in good faith in an effort to resolve any disputes that may arise under this Stipulated Order prior to seeking assistance from the Court in accordance with the Local Rules.

6. This Stipulated Order may be modified in the Court's discretion or by agreement of the Parties for good cause shown. If the Parties cannot resolve their disagreements regarding these modifications, the Parties shall seek a resolution pursuant to the Federal Rules of Civil Procedure governing discovery

disputes.

7. This Stipulated Order applies only to the Parties to this Action.

## D. PRESERVATION

The Parties have discussed their preservation obligations as expressed in Fed. R. Civ. P. 37(e) and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties agree that only ESI created or received between July 2021 and present will be preserved.

## E. SEARCH METHODOLOGY

1. The Parties agree that in responding to an initial Fed. R. Civ. P. 34 request, they may use keyword searching and/or advanced analytics (*i.e.,* technology-assisted review, Active Learning, etc.) to help to identify responsive data. No Party is required to run search terms and may instead use any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information. If needed, the Parties will meet and confer about methods to search ESI to identify materials that may be responsive to specific document requests.

2. But if requested by the Requesting Party, the Parties must meet and confer in good faith regarding the methodology for locating discoverable ESI, including (but not limited to) the use of search terms and queries, file types and date restrictions, data sources and custodians, or technology-assisted review before any such effort is undertaken.

3. To the extent a response to discovery requires production of discoverable ESI contained in a structured database or other source of structured data, the Parties shall meet and confer in an attempt to agree upon a set of queries

to be made for discoverable information. This data may be produced as PDF files, Excel files, or as comma separated value (.csv) text files.

F. **PRODUCTION FORMATS**

*Principles applicable to all productions of ESI and Hard Copy Documents.*

1. The Parties agree to make rolling productions of responsive, relevant, non-privileged Documents.

2. Documents will be produced to the Requesting Party with searchable text, in a format to be decided between the Parties. Acceptable formats include, but are not limited to, native files, single-page TIFFs with Load Files for e-discovery software that includes the Metadata fields in Exhibit A identifying natural document breaks and also includes companion OCR and/or Extracted Text files, and/or searchable PDF.

3. Each Document image file shall be named with a unique number (Bates Number). File names should not be more than twenty characters long or contain spaces.

4. Entire Document families must be produced, even if only the parent email or an attachment to an email is responsive.

5. Document level Extracted Text or OCR for Documents without Extracted Text will be provided by the Producing Party for every record, including for scanned Hard Copy Documents as described above. Extracted Text will not be provided for electronic Documents that have been redacted because the Extracted Text would reveal the redacted information. Instead, these files will be OCRed to capture the visible text and those results will be provided in lieu of the original Extracted Text.

6. The Parties are not obligated to populate manually any of the Metadata fields set forth below or in the attached Exhibit A if such fields cannot be reasonably extracted from a Document. The Parties reserve the right to request additional Metadata fields should the Party show good cause for the necessity of such additional Metadata.

7. The Parties agree that this Stipulated Order governs only the format of electronic production of Documents, and does not preclude a request for the production of Documents by inspection of Hard Copy Documents as they are kept in the usual course of business.

*Principles applicable to ESI.*

8. The Parties agree that, except as provided herein, ESI shall be produced in single-page black-and-white Group IV TIFF, 300-dpi format, or single-page .JPG (for color images where reasonably requested) and accompanied by an Opticon and IPRO load file (or other generally acceptable load file format) that contains document boundaries. Each TIFF file shall be given a unique file name that matches the Bates number label on the corresponding page.

9. Documents with hidden content, such as spreadsheets or presentations, shall be processed with all content unhidden and any notes displayed on the TIFF image.

10. If a Document is more than one page, the Parties shall make reasonable efforts, consistent with reasonable industry practices, to provide the logical unitization of the Document, any attachments, and/or affixed notes as they exist in the original Document.

11. The full text of each electronic Document shall be extracted

("Extracted Text") and produced in a text file. The Extracted Text shall be provided in searchable Unicode text format and shall be named with a unique Bates Number (e.g., the unique Bates Number of the first page of the corresponding production version of the Document followed by its file extension).

12. The Parties agree to produce Documents using the Coordinated Universal Time (UTC).

13. The Parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. The "most inclusive" email includes all attachments within an email thread and excludes emails constituting duplicate emails within the produced conversation thread. Upon reasonable request, the Producing Party will produce a less inclusive copy.

14. A Producing Party may de-duplicate electronic Documents and is not obligated to extract or produce entirely duplicate ESI. Removal of duplicate Documents shall only be done on exact duplicate Documents based on MD5 hash values across custodians. However, family relationships will be maintained and only exact email family groups will be de-duplicated. No email attachment will be de-duplicated against a loose file. Global de-duplication across the entire collection will be employed. This eliminates duplicates to retain only one copy of each Document per case. For example, if an identical Document resides with three custodians, only the first custodian's copy will be included in the review set. The All Custodian field will list each custodian, separated by a semicolon, who was a source of that Document.

15. The Parties agree that the fields of Metadata in Exhibit A shall be

preserved, collected, and produced, only to the extent it is reasonably accessible and non-privileged. This list of Metadata is intended to be flexible and may be changed by agreement of the Parties, particularly in light of advances and changes in technology, vendor, and business practices.

16. Unless otherwise agreed to by the Parties, unredacted files that are not easily converted to image format, such as spreadsheet, database, and audio or video, will be produced in native format. If particular Documents warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such Documents.

17. The original native files should be produced in addition to a single-page TIFF placeholder for each Document. The placeholder should be endorsed with "Produced in Native Format," and endorsed with the Bates number assigned to that Document and any Confidentiality designation. The produced native file should be named with the Bates number assigned to that Document. Any confidentiality or other designations stamped on the placeholder for such a Document shall apply to the entire native file and its contents. For Documents whose native format is MS Power Point, the original native files shall be produced with any unredacted comments and color preserved. The produced native file should be named with the beginning Bates numbers assigned to that Document. The Parties will confer and agree upon the other types of files that are not easily converted to image format and will therefore be produced in native format.

18. If any Document that would otherwise be produced in a native format requires redactions, that Document may be produced as a TIFF image, consistent with the terms in §§ F.5 and F.21 of this Stipulated Order. The Parties

agree that they may also use an industry standard native redaction tool for native redactions.

19.     The relative path to the native file should be included in the delimited text file and the produced files should be organized in a "NATIVES" folder in the production media.

20.     Native ESI, photographs, and video shall be produced in color if stored in color. Documents produced in color shall be produced as JPEG images, 300 dpi or higher and 24-bit color depth.  All other Documents should be produced in black and white, provided, however, that the color versions be preserved and produced upon the request of any Party.  The parties also will accommodate reasonable requests for production of images in color to the extent that the Requesting Party demonstrates that the loss of the color detracts from the ability to understand the meaning or content of the document.  If a dispute arises with regard to requests for higher resolution or color images, the Parties will meet and confer in good faith to try to resolve it.  Nothing in this order shall preclude a Producing Party from objecting to such requests as unreasonable in number, timing or scope, provided that a Producing Party shall not object if the Document as originally produced is illegible or difficult to read.  The Producing Party shall have the option of responding by producing a native-file version of the Document.

***Principles applicable to Hard Copy Documents.***

21.     The Parties agree that Documents existing in Hard Copy should be produced in single-page back-and-white Group IV, 300-dpi TIFF format and accompanied by an Opticon and IPRO load file (or other generally acceptable load file format). Each TIFF file will be given a unique file name that matches the Bates

number and any Confidentiality designation on the corresponding page. The accompanying load file shall contain, at a minimum, (a) ProdBeg, (b) ProdEnd, (c) BegAttach, (d) EndAttach, (e) custodian name, (f) Confidentiality, and (g) Redacted (Y/N). The full extracted or OCR text should be included and produced at a document level and located in the same folder as their respective document image or OCR/TEXT folder.

22. The Parties will undertake best efforts to unitize Documents correctly. In scanning Hard Copy Documents, distinct Documents should not be merged into a single record, and single Documents should not be split into multiple records (i.e., paper documents should be logically unitized).

23. Text of Hard Copy Documents shall be extracted using industry-standard OCR technology. Text files shall not contain the redacted portions of the Documents.

24. Responsive Hard Copy Documents shall not be eliminated as duplicates of responsive ESI.

**G. DOCUMENTS PROTECTED FROM DISCOVERY**

1. The obligation to provide a log of privileged or work product materials presumptively shall not apply to: (a) Attorney work product created by Outside Counsel for the Parties regarding this Action; (b) Internal communications within Outside Counsel for the Parties regarding this Action; and (c) communications between Outside Counsel and the Parties regarding this Action. With respect to privileged or work-product information generated after the filing of the complaint, Parties are not required to include any such information in privilege logs.

2. The Parties agree that, except as provided herein regarding presumptively privileged documents and ESI, they will produce privilege logs and will exchange information regarding claims of privilege or work product protection within 30 days of a production.

3. For documents and ESI that have been withheld or redacted as privileged, the withholding or redacting Party shall provide a privilege log of such documents and ESI, providing the following information to the extent it is reasonably available: date, author(s), custodian(s), recipient(s), file type, and a short non-privileged description of the document. In addition, the withholding or redacting Party shall also provide for each document on their privilege log an identifier for the privilege being asserted (e.g., "ACP" for attorney client privilege, "WP" for work product, or other descriptions as necessary based on the specific privilege being claimed) and the document's Bates numbers for redacted documents and a unique privilege identifier for documents withheld entirely.

4. The Parties reserve the right to request additional information regarding individual documents on the privilege log.

5. The production of attorney-client privileged, or work-product protected Documents, whether disclosed inadvertently or otherwise, is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding. This Stipulated Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d). Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of Documents, ESI, or other information (including Metadata) for relevance, responsiveness, or segregation of privileged or protected information

before production. Any disputes related to the inadvertent production of protected materials will be governed by the Protective Order agreed to by the Parties in this Action.

**SO ORDERED**.

Signed: February 16, 2023

David C. Keesler
United States Magistrate Judge

**STIPULATED AND AGREED**:

Dated: February 16, 2023

| | |
|---|---|
| */s/ Raina C. Borrelli* | */s/ Brandon C.E. Springer* |
| Raina C. Borrelli | Brandon C.E. Springer (Bar No. 54523) |
| raina@turkestrauss.com | ALSTON & BIRD LLP |
| TURKE & STRAUSS LLP | 101 N. Tryon Street, Suite 4000 |
| 613 Williamson St., Suite 201 | Charlotte, NC 28280 |
| Madison, WI 53703 | Telephone: (704) 444- 1007 |
| Telephone: (608) 237-1775 | Fax: (704) 444-1111 |
| Facsimile: (608) 509-4423 | brandon.springer@alston.com |
| | |
| *Counsel for Plaintiffs* | Kristine M. Brown (*pro hac vice*) |
| | Scott A. Elder (*pro hac vice*) |
| | ALSTON & BIRD LLP |
| | 1201 West Peachtree Street |
| | Atlanta, GA 30309 |
| | Telephone: (404) 881-7000 |
| | Fax: (404) 881-7777 |
| | kristy.brown@alston.com |
| | scott.elder@alston.com |
| | |
| | *Counsel for Defendant* |

# EXHIBIT A

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| PRODBEGDOC | First Page document number |
| PRODENDDOC | Last Page document number |
| PRODBEGATTACH | First Page of Family group range number |
| PRODENDATTACH | Last Page of Family group range number |
| CONFIDENTIALITY | "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," if so designated under the Protected Order; otherwise blank |
| REDACTED | "Yes" should be populated if document contains redaction. (Yes/ No format) |
| CUSTODIAN | All record owners of the file from whom the data was collected, including copies identified during global deduplication |
| ALL CUSTODIANS | Name(s) of All Custodians associated with the record including where documents have been removed as a duplicate during global deduplication. |
| HASH VALUE | A unique, identifying number of a file calculated by a hash algorithm, e.g. MD5. |
| FROM | Email Sender |
| TO | Email Recipient(s) |
| CC | Email Recipient(s) that were Copied |
| BCC | Email Recipient(s) that were Blind Copied |
| SUBJECT | Subject line of emails |
| PARENTID | Identification of email parent relationships |
| RECORD TYPE | The record type of a document. E-Mail Attachment, or E-Doc |
| FILENAME | Name of file |
| DATESENT/ TIME | Email sent date and time. Formatted as: mm/dd/yyyy  hh:mm:ss |
| DATERECEIVED/ TIME | Email received date and time. Formatted as: mm/dd/yyyy hh:mm:ss |
| DATESAVED | Save date |
| TIMESAVED | Save time |
| FILEEXT | File extension of document |
| AUTHOR | Author of document |
| COMPANY | Company that supplied the ESI in its raw format |
| TITLE | Title from document metadata (if applicable) |
| DATECREATED/ TIME | Date and time document was created on non-emails. Formatted as: mm/dd/yyyy  hh:mm:ss |
| DATEMODIFIED/ TIME | Last date and time document was modified on non-emails. Formatted as: mm/dd/yyyy  hh:mm:ss |
| FILESIZE | Size of Native file |
| PGCOUNT | Number of pages in document |
| OCRPATH | Path to extracted text of native file or OCR |

| NATIVELINK | Path to email or native file document (if applicable) |
|---|---|
| ORIGINALPATHFOLDER | Path including filename |