# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| CHRISTOPHER LAMIE and AMABEL LIN, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>LENDINGTREE, LLC,<br><br>      Defendant. | Case No. 3:22-cv-00307<br><br>Judge Frank D. Whitney |

## PLAINTIFFS' BRIEF IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# I.    INTRODUCTION

1.     This class action arises out of Defendant LendingTree LLC's ("LendingTree" or "Defendant") alleged failure to safeguard the personally identifiable information ("PII") that it maintained regarding Plaintiffs Christopher Lamie and Anabel Lin (collectively, "Plaintiffs," and, together with Defendant, the "Parties") and Settlement Class Members. Plaintiffs allege that LendingTree failed to reasonably secure, monitor, and maintain their and Class Members' PII, including full names, Social Security numbers, dates of birth, and street addresses. It is further alleged that this PII was stored on Defendant's private network and was compromised by way of a "code vulnerability" that allowed an unauthorized third party to access the PII of Plaintiffs and Class Members. As a result, Plaintiffs and other consumers alleged that they suffered present injury and damages in the form of identity theft, loss of value of their PII, out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the unauthorized access, exfiltration, and subsequent criminal misuse of their sensitive and highly personal information.

While Defendant denies the Plaintiffs' allegations and denies any liability, the Parties determined that they desired to settle the Litigation, and thus avoid the expense, risk, exposure, inconvenience, uncertainty, and distraction of continued litigation relating to this Data Security Incident. As further explained herein, the terms of the proposed settlement are fair, adequate, and reasonable; the proposed Settlement Class meets the requirements for certification for purposes of settlement, and the proposed notice program provides the best practicable notice under the circumstances and comports with Fed. R. Civ. P 23(c)(2). Accordingly, Plaintiffs respectfully request that the Court take the first step in the approval process and enter the Parties' proposed Preliminary Approval Order, which: (1) grants preliminary approval of the proposed Settlement;

(2) certifies the Settlement Class contemplated by the Parties' Settlement Agreement; (3) orders that the Parties' proposed Notice be sent to the Settlement Class; and (4) schedules a final approval hearing to consider final approval of the proposed Settlement, as well as approval of attorneys' fees, costs, and service awards to the Class Representatives.[1]

## II.  BACKGROUND

### a.  <u>History of the Litigation</u>

Plaintiffs assert that LendingTree, as the result of criminal threat actors exploiting a code vulnerability on LendingTree's online interfaces, disclosed personal information, including unencrypted and unredacted full names, Social Security numbers, dates of birth, and addresses ("Private Information") of consumers, to an unauthorized third party in February 2022 (the "Data Security Incident"). On July 11, 2022, Plaintiff Christopher Lamie filed a Class Action Complaint against the Defendant that was subsequently amended on September 2, 2022, to add Plaintiff Amabel Lin. Plaintiffs' claims include negligence, negligence per se, breach of an implied contract, unjust enrichment, and for violations of North Carolina's Unfair Trade Practices Act. LendingTree moved to dismiss the Amended Complaint and, after full briefing, that motion was denied by the Court and the parties proceeded with written discovery and document production.

### b.  <u>Settlement Negotiations</u>

After meeting and conferring on multiple occasions regarding the potential for early settlement, the Parties agreed to mediate the case. Following arms-length negotiations, the Parties negotiated a settlement with the assistance of Hunter Hughes, Esq. at a mediation on May 30,

---

[1] Plaintiffs will file a separate motion for attorneys' fees and the reimbursement of litigation costs and expenses, as well as for service payments to the Class Representatives, along with supporting declarations and reports, contemporaneously with the motion seeking final approval of the settlement. Plaintiffs have proposed a schedule for the filing of each of these motions in the Proposed Order.

2023. The Parties agreed to resolve all matters pertaining to, arising from, or associated with this litigation, including all claims Plaintiffs and Settlement Class Members have or may have had against LendingTree and related persons and entities. Throughout their mediation session, the Parties engaged in an extensive evaluation and discussion of the relevant facts and law, and the Parties carefully considered the risk and uncertainties of continued litigation.

Over the next several weeks following mediation, the Parties diligently negotiated, drafted, and finalized the settlement agreement, notice forms, and came to an agreement on a claims process and administrator. The Settlement Agreement was finalized and signed by the Parties in July 2023.

     c.  **<u>Terms of the Settlement</u>**

As described in the Settlement Agreement, the settlement benefits are substantial, and will be paid from a $875,000 non-reversionary settlement fund.

     i.  *The Settlement Class*

The Settlement Class is defined as all individuals whose Private Information was compromised or potentially compromised in the Data Security Incident.

Excluded from the Settlement Class are: (1) the judge presiding over this Action, and members of his direct family; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, and employees; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline. S.A. ¶ 50.

     ii.  *The Settlement Benefits*

The following benefits will be available to Settlement Class Members who submit valid and timely claim forms.

a. Credit Monitoring: All Settlement Class Members are eligible to enroll in three (3) years of Credit Monitoring Services, regardless of whether the Settlement Class Member submits a claim for reimbursement of Unreimbursed Economic Losses or Lost Time.

b. Compensation for Unreimbursed Economic Losses: Each Class Member may claim up to a total of $10,000 per person who is a member of the Settlement Class, upon submission of a claim and supporting documentation, for unreimbursed monetary losses incurred as a result of the Data Security Incident

c. Compensation for Lost Time: Class Members may claim compensation for up to 10 hours of lost time, at $25.00/hour ($250 cap), for time spent mitigating the effects of the Data Security Incident. Class Members may submit claims for up to 10 hours of lost time with only an attestation demonstrating that they spent the claimed time responding to issues raised by the Data Security Incident. Claims for lost time can be combined with claims for Unreimbursed Economic Loss but are subject to the $10,000 cap.

d. $100 Cash Compensation (Alternative Cash Payment): Settlement Class Members can elect to make a claim for a $100 Alternative Cash Payment in lieu of all the other settlement benefits outlined above. To receive this benefit, Settlement Class Members must submit a valid claim form, but no documentation is required to make a claim. The amount of the Alternative Cash Payments will be increased or decreased on a *pro rata* basis, depending upon the number of valid claims filed and the amount of funds available for these payments.

4

### iii. *Administration of Notice and Claims*

The Parties have selected KCC, LLC ("Settlement Administrator") to act as the Settlement Administrator to oversee the administration of the settlement. Notice will be given to the Settlement Class via individual notice, and will be given primarily by mailing the Short Notice (attached to the Settlement Agreement as Exhibit A) by first-class mail to the postal addresses of Settlement Class Members. S.A. ¶ 81.

The notice documents are clear and concise and directly apprise Settlement Class Members of all the information they need to know to make a claim or to opt-out or object to the Settlement. Fed. R. Civ. P. 23(c)(2)(B).

A settlement website will be established and administered by the Settlement Administrator, and shall contain information about the Settlement, including electronic copies of **Exhibits A through E** to the Settlement Agreement (or any forms of these notices that are approved by the Court), the Settlement Agreement, and all Court documents related to the Settlement. S.A. ¶ 55. The Settlement Website is viewed as an important piece of the notice plan to Class Members. Furthermore, a toll-free help line shall be made available to provide Settlement Class Members with information relevant to this Settlement.

All costs for administration and notice will be paid from the Settlement Fund within twenty-one (21) calendar days after entry of Preliminary Approval Order.

### iv. *Exclusions and Objections*

The Notice shall explain the procedure for Settlement Class Members to exclude themselves or "opt-out" of the Settlement by submitting a Request for Exclusion to the Settlement Administrator postmarked no later than the Opt-Out Deadline. S.A. ¶ 83. The proposed Opt-Out Deadline is 60 days after the Notice Deadline. *Id*. at ¶ 38. The Request for Exclusion must include

the name of the proceeding, the individual's full name, current address, personal signature, and the words "Request for Exclusion," a comparable statement that the individual does not wish to participate in the Settlement, or some other clear manifestation of the intent to opt-out of the Settlement in the written communication. *Id*. at ¶ 83. Any Settlement Class Member who does not file a timely Request for Exclusion will lose the opportunity to exclude himself or herself from the Settlement and will be bound by the Settlement.

The Notice shall also explain the procedure for Settlement Class Members to object to the Settlement or Fee Application by submitting written objections to the Court no later than the Objection Deadline. *Id*. at ¶ 84. The proposed Objection Deadline is also 60 days after the Notice Deadline. *Id.* at ¶ 37. A written objection must include (i) the name of the proceedings; (ii) the Settlement Class Member's full name, current mailing address, and telephone number; (iii) a statement of the specific grounds for the objection, as well as any documents supporting the objection and a description of whether the objection applies only to the Settlement Class Member, a subset of the Settlement Class, or the entire Settlement Class; (iv) the identity of any attorneys representing the objector (if any), as well as a description of the attorney's background and prior experience, the amount of anticipated fees and method of calculation, the attorney's hourly rate, and the number of hours spent working; (v) a statement regarding whether the Settlement Class Member (or his/her attorney) intends to appear at the Final Approval Hearing; (vi) a description and/or copies of evidence that may be introduced at the fairness hearing; (vii) a list of proceedings in which the Settlement Class Member has submitted an objection during the past five years; and (viii) the signature of the Settlement Class Member or the Settlement Class Member's attorney. *Id.* at ¶ 84.

v. *Attorneys' Fees and Costs and Service Awards to Class Representatives*

The Parties did not discuss attorneys' fees or service awards until after class relief was agreed upon. The Settlement Agreement contemplates that within 45 days after the Notice Deadline (and 15 days prior to the Opt-Out and Objection Deadlines), Plaintiffs will move the Court for an award of attorneys' fees equal to one-third (33 1/3%) of the non-reversionary fund, or $291,666.67. S.A. ¶ 100. Plaintiffs will also move the Court for reasonable service awards of $3,000 per Plaintiff, in recognition of their efforts on behalf of the Class. *Id*. at ¶ 48.

**d. Fairness Hearing**

If the proposed Class is certified and the settlement preliminarily approved, Plaintiffs respectfully request that the Court set a Final Fairness Hearing within a reasonable time after the Notice Deadline, Objection Deadline, and Opt-Out Deadline; and at least 90 days after the Settlement Administrator notifies the appropriate government officials of this Settlement Agreement pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. S.A. ¶ 87.

**III. LEGAL STANDARDS FOR PRELIMINARY APPROVAL, CONDITIONAL CLASS CERTIFICATION, AND APPROVAL OF THE NOTICE FORM.**

**a. Preliminary Approval of Settlement**

Federal Rule of Civil Procedure 23(e) requires judicial approval of any proposed settlement of claims brought on behalf of a class. *See* Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval."). Courts may approve a proposed class settlement upon a "finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To assist the Court, Rule 23(e)(1)(A) requires the parties to "provide the Court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Courts in the Fourth Circuit follow a bifurcated approach to determine whether a settlement is "fair, reasonable, and adequate" under

Rule 23. *See In re MicroStrategy, Inc. Sec. Litig.,* 148 F.Supp.2d 654, 663 (E.D. Va. 2001) (citing *In re Jiffy Lube Sec. Litig.,* 927 F.2d 155, 158 (4th Cir. 1991)).

First, at the preliminary approval stage, the court determines whether the proposed Settlement is "within the range of possible approval" or, whether there is "probable cause" to give notice of the proposed Settlement to class members. *See Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994); *accord In re NeuStar, Inc. Sec. Litig.,* No. 1:14CV885 JCC/TRJ, 2015 WL 5674798, at *10 (E.D. Va. Sept. 23, 2015). The primary issue before the Court is whether the proposed Settlement is within the range of what might be found fair, reasonable, and adequate. *Matthews v. Cloud 10 Corp.*, Case No. 14-00646, 2015 U.S. Dist. LEXIS 114586, at *4 (W.D.N.C. Aug. 27, 2015); *accord* MANUAL FOR COMPLEX LITIGATION, FOURTH, §13.14, at 172–73 (2004) ("Manual Fourth") (at the preliminary approval stage, "[t]he judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed Settlement, and date of the final fairness hearing.").

The Court of Appeals for the Fourth Circuit has laid out a series of factors for courts to consider when determining whether a proposed settlement is fair and adequate and, thereby, reasonable. *Jiffy Lube*, 927 F.2d at 159. To determine the fairness of a proposed Settlement, the Court considers: (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of class action litigation. *Jiffy Lube*, 927 F.2d at 159. There is a "strong presumption in favor of finding a settlement fair." *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009) (internal quotation omitted). To determine the adequacy of a proposed Settlement, the Court considers: (1) the relative strength of

the plaintiff's case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiff is likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement. *Id.* at 159; *MicroStrategy*, 148 F.Supp.2d at 665.

In making the determination of preliminary approval, the Court does not answer the ultimate question of whether the proposed Settlement is fair, reasonable, and adequate; this analysis is reserved for the second stage of the settlement approval process. Instead, the first stage of the settlement approval process is focused on whether the settlement is sufficiently adequate to permit notice to be sent to the class. *See Hall v. Higher One Machines, Inc.*, No. 5-15-CV-670-F, 2016 WL 5416582, at *5 (E.D.N.C. Sept. 26, 2016) ("If the proposed settlement is preliminarily acceptable, the court then directs that notice be provided to all class members who would be bound by the proposed settlement in order to afford them an opportunity to be heard on, object to and opt out of the settlement."). The court has the discretion to determine whether to approve the proposed Settlement. *Jiffy Lube*, 927 F.2d at 158. "There is a strong judicial policy in favor of settlement, in order to conserve scarce resources that would otherwise be devoted to protracted litigation*." Covarrubias v. Capt. Charlie's Seafood, Inc*., No. 2:10-CV-10-F, 2011 WL 2690531, at *2 (E.D.N.C. July 6, 2011).

b. **Conditional Class Certification**

"When a settlement is reached prior to Rule 23 certification, the law permits a class to be certified solely for the purposes of settlement." *Gamas v. Scott Farms, Inc.,* No. 5:13-CV-447-FL, 2014 WL 12546373, at *2 (E.D.N.C. Dec. 24, 2014). A district court faced with a settlement-only class need not inquire whether the class would present intractable problems

with trial management, but must analyze whether the other requirements for certification must have been satisfied. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). To approve a class settlement, the Court must still consider the requirements for class certification under Rule 23. *In re NeuStar*, 2015 WL 5674798, at *2 (citing and quoting *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 367 (4th Cir. 2004)). The Settlement Class must also satisfy one of the categories of Rule 23(b). *Id*. However, the Court may disregard the manageability concerns of Rule 23(b)(3) because the Court may properly consider that there will be no trial. *See Amchem,* 521 U.S. at 620.

c. **Notice Form Approval**

As part of the preliminary approval process, the district court must also approve the notice of the settlement that the Parties propose be sent to Class Members. *See* Fed. R. Civ. P. 23(c)(2)(B). The notice must comport with due process and provide the "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id.*; *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). Rule 23 leaves the form of the notice to the Court's discretion. *See Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 227 (E.D. Va. 2003) ("a court may exercise its discretion to provide the best notice practicable under the circumstances."); *see also* Fed. R. Civ. P. 23(c)(2)(B).

**IV. ARGUMENT**

The proposed Settlement warrants preliminary approval. Evaluation under the enumerated *Jiffy Lube* and Rule 23 factors set out above confirms that the proposed Settlement is fair, adequate, and reasonable; accordingly, the Court should grant preliminary approval, and issue notice of the Settlement to the Settlement Class.

### A. The Class Was Adequately Represented.

"[T]he adequacy requirement is met when: (1) the named plaintiff does not have interests antagonistic to those of the class; and (2) plaintiff's attorneys are qualified, experienced, and generally able to conduct the litigation." *Brown v. Transurban USA, Inc.*, 318 F.R.D. 567 (E.D. Va. 2016) (citation omitted). Here, the Settlement Class Representatives have the same interests as other class members as they are asserting the same claims and share the same injuries.

Further, Class Counsel has the experience and qualifications to lead this litigation and the record shows Class Counsel worked diligently to litigate and ultimately bring this case to resolution. *See In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471, 485 (4th Cir. 2020) (finding counsel's experience in complex civil litigation supported fairness of settlement).

### B. The Proposed Settlement Was Negotiated at Arm's Length.

The Court can safely conclude this Settlement was negotiated at arm's length, without collusion, based on the terms of the Settlement itself; the length and difficulty of the negotiations; and the involvement of a highly experienced mediator, Mr. Hughes. *See In re NeuStar, Inc. Sec. Litig.*, No. 1:14–CV–885(JCC/TRJ), 2015 WL 5674798, at *10 (E.D. Va. Sept. 23, 2015) (adversarial encounters support a finding of arms' length negotiations). This factor supports a finding that the Court will likely be able to finally approve the Settlement.

### C. The Relief is Fair, Reasonable, and Adequate.

The relief offered to Class Members in the proposed Settlement is more than adequate under the factors outlined in Rule 23(e)(2)(C). The Settlement establishes an $875,000 non-reversionary common fund. Settlement Class Members are entitled to benefits that are tailored to the relief sought through the litigation: three years of credit monitoring services; recovery of up to

11

$10,000 per Class Member for unreimbursed economic losses; up to 10 hours of lost time at $25 per hour; or a $100 alternative cash payment. Lending Tree's agreed Business Practice Changes are likewise an important benefit flowing to Settlement Class Members, whose sensitive personal information may still reside with Defendant.

Class Counsel, a group with a wealth of experience in leading major data breach class actions, strongly believe that the relief is fair, reasonable, and adequate. The Court may rely upon such experienced counsel's judgment. *See, e.g., Nelson v. Mead Johnson & Johnson Co*., 484 F. App'x 429, 434 (11th Cir. 2012) ("Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel.")

That the relief is fair, reasonable, and adequate is further confirmed by considering the four specific factors enumerated in Rule 23(e)(2).

### 1. The costs, risk, and delay of trial and appeal.

Plaintiffs believe their claims are viable and that they have a reasonably good chance of proving that LendingTree's data security was inadequate and that, if they establish that central fact, Defendant is likely to be found liable under at least some of the liability theories and statutory and common law Plaintiffs pled in their Operative Complaint. While Plaintiffs believe they have strong claims and would prevail, success is not guaranteed.

The value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain —especially where serious questions of law and fact exist, which is common in data security incident litigation. This field of litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc*., No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases . . . are particularly risky, expensive, and complex.").

Plaintiffs strongly believe in the merits of their case, but also understand that LendingTree asserts a number of potentially case-dispositive defenses. Should litigation continue, Plaintiffs would need to clear the significant hurdle of class certification, which has been denied in other incident cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Plaintiffs dispute the defenses LendingTree asserts—but it is obvious that their success at trial is far from certain. Through the Settlement, Plaintiffs and Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

Although nearly all class actions involve a high level of risk, expense, and complexity, this is a particularly complex class. Data security incident cases of wide-spread notoriety and implicating data far more sensitive than the data alleged here have been found wanting at the federal district court level. *See, e.g., In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), reversed in part, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiff had standing to bring a data breach lawsuit). Moreover, these cases can take years to litigate to final resolution. Settlement in the same *In re OPM* litigation took five full years of litigation to achieve.

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, these types of cases are among the riskiest and uncertain of all class action litigation, making settlement the more prudent course when a reasonable one can be reached. The damages methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. Establishing causation on a class-wide basis in a data breach case is rife with uncertainty.

13

Another significant risk faced by Plaintiffs here is the risk of maintaining class action status through trial. The class has not yet been certified, and Defendant will certainly oppose certification if the case proceeds. Thus, Plaintiffs "necessarily risk losing class action status." *Grimm v. American Eagle Airlines, Inc.*, No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376, at *10 (C.D. Cal. Sept. 24, 2014). This over-arching risk simply puts a point on what is true in all class actions —class certification through trial is never a settled issue, and is always a risk for the Plaintiffs.

Each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal—which would result in zero recovery to the class. "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmeid, Inc*., No. 14CV1372DMS(DHB), 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016).

### 2. The method of distributing relief is effective.

The proposed distribution process will be efficient and effective. The available relief is detailed clearly in the Notice, which will be provided to all Settlement Class Members and lays out the benefits to which they are entitled. Because Settlement Class Members may make claims through a simple online form or by mail, the method of distributing the relief is both efficient and effective.

### 3. The terms relating to attorneys' fees are reasonable.

Class Counsel will request an award of attorneys' fees and litigation costs not to exceed one-third of the Settlement Fund, or $291,666.67. Under the Settlement Agreement, Plaintiffs' request for Attorneys' Fees and Expenses must be filed with the Court at least 14 days before the Objection and Opt-Out deadline.

In the settlement negotiations, attorneys' fees were not discussed in any manner until the Parties had reached agreement on the material terms of the Settlement, including the terms of the Class relief. The ultimate fee award will be determined in the discretion of the Court based on an application to the Court based on Fourth Circuit law with the opportunity for comment from Settlement Class Members. Importantly, the Settlement Agreement is not conditioned upon the Court's approval of the fee award.

Class Counsel will request service awards of $3,000 for each of the Settlement Class Representatives. Service awards of this size are reasonable. *See In re: Lumber Liquidators Chinese-Manufactured Flooring Durability Mktg*., No.115MD2627AJTTRJ, 2020 WL 5757504, at *3 (E.D. Va. Sept. 4, 2020) (granting service award of $5,000). The Settlement Agreement is not conditioned on the Court's approval of this request.

### 4. Any agreement required to be identified under Rule 23(e)(3).

Rule 23(e) mandates that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(2)-(3). Here, there are no additional agreements.

### 5. The Proposed Settlement Treats Class Members Equitably.

Finally, the proposed Settlement treats all class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D). All Settlement Class Members will have the same opportunity to file a claim for the same benefits. There is no cap on the number of claims, meaning that no Class Member will obtain any greater relative benefit over another.

Importantly, direct Notice will be sent to Settlement Class Members, and all Settlement Class Members will also have the opportunity to object to or exclude themselves from the Settlement. And, while Plaintiffs will each be seeking a $3,000 award for their services on behalf

of the class, this award is *less than* the $10,000 amount that any given Class Member can claim in reimbursements. This factor also supports approval.

**D. The Class Should Be Conditionally Certified for Settlement Purposes.**

When presented with a settlement-only class, a district court must determine whether a class meets the requirements of Federal Rules 23(a) and 23(b)(2) or 23(b)(3)—save for evaluation of any class manageability issues at trial. *Amchem*, 521 U.S. at 591, 617, 620. Settlement classes are routinely certified in similar consumer data breach cases, including data breach class actions.[2] There is nothing different about this case, which is demonstrated by examining the requirements of Rule 23(a) and (b).

*i. The Settlement Class Satisfies the Requirements of Rule 23(a)*

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

**1. Numerosity**

Rule 23(a)(1) demands evidence that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). No set minimum number of potential class members is

---

[2] *See, e.g., In re: Capital One Consumer Data Sec. Breach Litig.*, MDL No. 1:19md2915 (AJT/JFA)*, Doc. 118 (E.D. Va. February 7, 2022); *Abubaker v. Dominion Dental USA, Inc.*, No. 1:19-cv-01050, 2021 WL 6750844 (E.D. Va. Nov. 19, 2021); *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, No. 1:16-c-03025, 2019 WL 3183651 (D. Md. July 15, 2019); *In re: Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800, 2020 WL 256132 (N.D. Ga. March 17, 2020), aff'd in relevant part 999 F.3d 1247 (11th Cir. 2021), cert. denied sub nom. *Huang v. Spector*, 142 S. Ct. 431 (2021), and cert. denied sub nom. *Watkins v. Spector*, No. 21-638, 2022 WL 89334 (U.S. Jan. 10, 2022); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018).

required to fulfill the numerosity requirement. *Sanchez-Rodriguez v. Jackson's Farming Co. of Autryville*, No. 7:16-CV-28-D, 2017 WL 396667, at \*2 (E.D.N.C. Jan. 27, 2017). Here, the proposed Settlement Class satisfies numerosity because the Settlement Class contain 69,142 Class Members.

### 2. Commonality

The Settlement Class meets Rule 23's "commonality" requirement because "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The requirement is "liberally construed . . . a class action will not be defeated solely because there are some factual variations among the members' grievances." *Rodger v. Elec. Data Sys. Corp.*, 160 F.R.D. 532, 537 (E.D.N.C. 1995). Commonality "does not require that all questions of law or fact in a case be common to each class member, rather, only a single common question must exist." *Id.* With respect to commonality, "[w]hat matters to class certification is the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc., v. Dukes,* 564 U.S. 338, 350 (2011).

Rule 23(a)(2)'s commonality requirement is met where, as here, the defendant engaged in a common course of conduct. *Fisher v. Virginia Elec. & Power Co.*, 217 F.R.D. 201, 223 (E.D. Va. 2003). Here, all Settlement Class Members suffered the same alleged injury—theft of their personal data in the Data Security Incident—and are asserting the same legal claims. These raise a number of common questions, such as whether LendingTree failed to adequately safeguard the records of Plaintiffs and other Settlement Class Members, whether data security safeguards were common across the Class, and whether those applied to the data of one Settlement Class Member did not differ from those safeguards applied to another.

17

These common questions, and others alleged by Plaintiffs in their operative Complaint, are central to the causes of action brought here and can be addressed on a class-wide basis. Thus, Plaintiffs have met the commonality requirement of Rule 23. Accordingly, common questions of law and fact abound. *See, e.g., Dominion*, 2021 WL 6750844, at *3; *Equifax*, 2020 WL 256132, at *11-12; *Anthem*, 327 F.R.D. at 309.

### 3. Typicality

Class Representatives for the Settlement Class fulfill Rule 23(a)'s "typicality" requirement because "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The "typicality" requirement does not require the Class Representatives to have identical facts and legal claims as the class; rather, the claims "cannot be so different from the claims of absent class members that their claims will not be advanced by [Class Representatives'] proof of [their] own individual claim[s]." *Beaulieu v. EQ Indus. Servs., Inc.*, No. 5:06-CV-00400BR, 2009 WL 2208131, at *13 (E.D.N.C. July 22, 2009). For typicality to be satisfied, the "representative party's interest in prosecuting his own case must simultaneously tend to advance the interests of the absent class members." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). "Generally, the court must determine whether the asserted claims 'arise from the same event or practice or course of conduct and are based on the same legal theories as the claims of the unnamed class members.'" *Id.* at *40 (citing *Rodger*, 160 F.R.D. at 538).

This requirement is readily satisfied in data breach cases like this one. The Settlement Class Representatives' claims are typical of other Settlement Class Members because they arise from the same Data Security Incident and involve the same overarching legal theories. *See, e.g., Dominion*, 2021 WL 6750844, at *3; *Equifax*, 2020 WL 256132, at *12. The legal and factual

arguments that the Plaintiffs representing the Settlement Class advance are the same arguments that other Settlement Class Members would advance in support of their claims. In this case, "[b]ecause the claims of the representative parties are the same as the claims of the class, the typicality requirement is satisfied." *Thorn v. Jefferson-Pilot Life Ins. Co*., 445 F.3d 311, 339 (4th Cir. 2006).

### 4. Adequate Representation

Last, Plaintiffs meet Rule 23(a)(4)'s adequacy requirement because Class Representatives have "common interests with unnamed members of the class" and "vigorously prosecute[d] the interests of the class through qualified counsel." *Beaulieu*, 2009 WL 2208131, at *15 (citing *Olvera-Morales v. Intern. Labor Mgmt Corp.*, 246 F.R.D. 250, 258 (M.D.N.C. 2007)). The adequacy analysis evaluates potential conflicts of interest between named parties and the class. *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 338 (4th Cir. 1998). "[B]asic due process requires that the named plaintiffs possess undivided loyalties to absent class members." *Id*.

First, the interests of the Class Representatives fully align with the members of the Settlement Class. As discussed above, Plaintiffs are prosecuting the same claims as the Settlement Class, and these claims arise from LendingTree's alleged data breach. The Class Representatives have also demonstrated their commitment to monitor and supervise the prosecution of the case on behalf of the Settlement Class.

Second, the Class Representatives have protected the interests of the Settlement Class by retaining qualified, experienced counsel to represent the Settlement Class. Plaintiffs' counsel have litigated this vigorously. See Joint Declaration of Counsel, Attached hereto as Exhibit 2. Plaintiffs' counsel are also nationally recognized for prosecuting large, complex class actions,

and have effectively represented numerous plaintiffs in other consumer-protection actions, class actions, and complex business cases, typically as lead or co-lead counsel. *Id*. Thus, per Rule 23, both the Class Representative and Plaintiffs' counsel provide adequate representation of the Settlement Class.

### 5. Ascertainability

Rule 23 also contains the implied requirement that the court be able to "readily identify the class members in reference to objective criteria." *EQT Prod. Co.*, 764 F.3d at 358. A proposed class representative "need not be able to identify every class member at the time of certification." *Id*. "[E]xtensive and individualized fact-finding" or "mini-trials" render certification inappropriate. *Id*. (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012)). Here, the proposed Class meets the implied "ascertainability" requirement, because the Members are "readily identifiable." Indeed, Defendant identified each member of the Class and sent them notice of the Data Security Incident.

#### ii. *The Settlement Class Satisfies the Requirements of Rule 23(b)(3)*

Because the Settlement Class seeks to recover damages, the Court must also determine whether the Class complies with the commonality and superiority requirements of Fed. R. Civ. P. 23(b)(3). Both requirements are satisfied here.

### 6. Common Questions of Law and Fact Predominate.

The Settlement Class satisfies the predominance inquiry because the "'proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Beaulieu*, 2009 WL 2208131, at *20 (citing *Amchem,* 521 U.S. at 623). "The inquiry with respect to the predominance standard focuses on the issue of liability, and if the liability issue is common to the class, common questions are held to predominate over individual ones." *In re Red Hat, Inc. Sec. Litig.,* 261

20

x

F.R.D. 83, 89-90 (E.D.N.C. 2009) (internal citation omitted); *accord McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465, 478 (E.D.N.C. 2010) ("common evidence . . . would establish a prima facie case for the class. Furthermore, the likelihood that class members may have suffered individual damages does not impact the predominance analysis. *See Gunnells v. Healthplan Servs.*, 348 F.3d 417, 427-28 (4th Cir. 2003) ("Rule 23 contains no suggestion that the necessity for individual damage determinations destroys commonality, typicality, or predominance, or otherwise forecloses class certification.").

Here, as in other data breach cases, common questions predominate because all claims arise out of a common course of conduct by LendingTree. *See, e.g., Dominion*, 2021 WL 6750844, at *3; *Equifax*, 2020 WL 256132, at *13; *Anthem*, 327 F.R.D. at 311-16. The focus on a defendant's security measures in a data breach class action "is the precise type of predominant question that makes class-wide adjudication worthwhile." *Anthem*, 327 F.R.D. at 312. Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues.[3] Proof of the class claims will leave nothing for Plaintiffs to prove individually. In other words, the class claims predominate over the individual claims.

---

[3] *See, e.g., Hapka v. CareCentrix, Inc.*, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case, stating "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [Defendant's] alleged conduct predominate over any individualized issues"); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach); *In re Heartland Payment Sys. Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1059 (S.D. Tex. 2012) (finding predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class).

### 7. Class Resolution of this Action is Superior to Other Methods of Adjudication.

Last, Plaintiffs fulfill the superiority requirement of Rule 23(b)(3). Litigating the same claims of over 69,000 persons through individual litigation would obviously be inefficient. The superiority requirement thus is satisfied. *See Equifax*, 2020 WL 256132, at *14; *Anthem*, 327 F.R.D. at 315-16. This case also presents a disincentive to pursue individual lawsuits because the prospect of small individual recoveries is dwarfed by the cost of litigation. Class treatment is undeniably superior to individual adjudications.

### V. Plaintiffs' Notice Form and Plan Satisfies the Requirements of this Court

As outlined above, the Notice provided satisfies the Rule 23 requirements. The proposed Notices (Exhibits A and B to the Settlement Agreement) provide clear and accurate information as to: (1) a summary of the complaint and the nature and principal terms of the Settlement; (2) the definitions of the Settlement Class; (3) the claims and defenses alleged; (4) the procedures and deadlines for opting-out of the proposed Settlement or submitting objections and the date, time and place of the Final Approval Hearing; and (5) the consequences of taking or foregoing the options available to Class Members. The proposed Notice informs Class Members about the attorneys' fees and costs that may be sought by Plaintiffs' Counsel, pursuant to Fed. R. Civ. P. 23(h), and the identities and contact information for Class Counsel, Counsel for Defendant, and the Court. The Notice Program complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. *See, e.g.*, Manual Fourth § 21.311-21.312.

### VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) preliminarily approve the proposed Settlement Agreement pursuant to Fed. R. Civ. P. 23(c) and (e); (2)

preliminarily certify the proposed Settlement Class; (3) approve the proposed Class Notice and Notice forms; and (4) schedule a final approval hearing to consider final approval of the proposed Settlement, and approval of attorneys' fees, costs, and service award.

Dated: July 20, 2023

TURKE & STRAUSS LLP

By: _/s/ Raina C. Borrelli_
Raina C. Borrelli (*pro hac vice*)
613 Williamson St., Suite 201
TURKE & STRAUSS LLP
Madison, WI 53703
Telephone: (608) 237-1775
Facsimile: (608) 509-4423
raina@turkestrauss.com

Martin A. Ramey
Joel R. Rhine
RHINE LAW FIRM, P.C.
1612 Military Cutoff Road, Suite 300
Wilmington, NC 28403
Telephone: (910) 772-9960
mjr@rhinelawfirm.com
jrr@rhinelawfirm.com

David K. Lietz (*pro hac vice* anticipated)
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052
Telephone: (202) 744-1795
Facsimile: (202) 686-2877
dlietz@milberg.com

*Attorneys for Plaintiffs and Proposed Settlement Class*

23