# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| CHRISTOPHER LAMIE and AMABEL LIN, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　　Plaintiffs,<br><br>　v.<br><br>LENDINGTREE, LLC,<br><br>　　　　　　　　Defendant. | Case No. 3:22-cv-00307<br><br>Judge Frank D. Whitney |

## PLAINTIFFS' MOTION FOR APPROVAL OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARD

On November 25, 2023, the Court granted preliminary approval to the class action settlement of this case, which creates a $875,000 non-reversionary settlement fund from which significant benefits to the Class of approximately 69,142 potential data breach victims will be provided, including:

- 3-years of credit monitoring with a $1 million in identity theft protection insurance at an estimated retail value of no less than $22,402,008 ($9/month x 36 months x 69,142 Class Members)—aimed at protecting Class Members from future harm caused by the breach.

- Up to $10,000 for unreimbursed economic losses and lost time (up to 10 hours at $25 per hour) that Class Members have already incurred.

- A $100 Alternative Cash Payment requiring no documentation, only a valid claim, in lieu of the other settlement benefits.

- Payment by Defendant (through the settlement fund) of attorneys' fees and expenses of $291,666.67 to Class Counsel and a service award of $3,000 to each of the Plaintiffs ($6,000 in total) in addition to all of the other relief provided to the Class Members.

1

- Defendant to pay the costs of notice and settlement administration through the settlement fund.

Court-approved notice of the proposed Settlement has been sent to the Class and a final approval hearing is scheduled for January 25, 2024. In conjunction with final approval, Plaintiffs respectfully request that the Court approve the attorneys' fees, expenses, and service award contemplated by the Settlement (one-third of the settlement fund, or $291,666.67 in attorneys' fees, $18,281.77 in reasonable litigation expenses, and a $3,000 service award to each Class Representative). The requested fees, expenses, and service awards are all reasonable, are similar to those awarded in similar litigation, are to be paid by Defendant through the settlement fund (and Defendant does not object to making the payments) and recognize the efforts of Class Counsel and the Plaintiffs in achieving a benefit for thousands of other people, all at their own risk.

## BACKGROUND FACTS & PROCEDURAL HISTORY

### A. The Data Breach and Plaintiffs' Claims

LendingTree is a publicly traded online marketplace for loan services with consumers throughout the country. Plaintiffs' Complaint ("Am. Compl.") ¶¶14, 18, 24. In order for consumers to utilize LendingTree's services, LendingTree required consumers to provide their PII. *Id*. ¶25. That information includes consumers' full names, social security numbers, dates of birth, and street addresses. *Id*. ¶2. In so doing, LendingTree promises to protect consumers' data. *Id*. ¶54. Indeed, consumers rely on LendingTree's promise to protect their PII. *Id*. ¶26. Even so, Plaintiffs allege that LendingTree knowingly failed to implement and maintain adequate and reasonable measures to ensure that the PII of the Class were properly safeguarded. *Id*. ¶6. As a result, Plaintiffs allege that LendingTree's misconduct led to the February 2022 Data Breach. *Id*. ¶¶2, 4.

Plaintiffs are victims of the February 2022 LendingTree data breach. *Id*. ¶¶15, 19. On July 11, 2022, Plaintiff Christopher Lamie filed a Class Action Complaint against the Defendant that

was subsequently amended on September 2, 2022, to add Plaintiff Amabel Lin. *See Lamie et al. v. LendingTree, LLC, Case No. 3:22-cv*-00307. Plaintiffs' claims include negligence, negligence *per se*, breach of an implied contract, unjust enrichment, and for violations of North Carolina's Unfair Trade Practices Act. Prior to filing these cases, Plaintiffs' counsel conducted an extensive pre-suit investigation to ascertain all publicly available details about the cause, scope, and result of the data breach, as well as about the damages suffered by the Plaintiffs and the Class. Joint Dec. ¶4[1]. LendingTree moved to dismiss the Amended Complaint and, after full briefing, that motion was denied by the Court and the parties proceeded with written discovery and document production.

After meeting and conferring on multiple occasions regarding the potential for early settlement, the Parties agreed to mediate the case. *Id*. ¶10.

**B. Mediation**

On May 30, 2023, the parties participated in a full-day mediation with Hunter Hughes, Esq. Joint Dec. ¶11. The Parties agreed to resolve all matters pertaining to, arising from, or associated with the Litigation, including all claims Plaintiffs and Settlement Class Members have or may have had against LendingTree and related persons and entities. *Id.*

Throughout their mediation session, the Parties engaged in an extensive evaluation and discussion of the relevant facts and law, and the Parties carefully considered the risk and uncertainties of continued litigation. *Id.* ¶12. Over the next several weeks following mediation, the Parties diligently negotiated, drafted, and finalized the settlement agreement, notice forms, and came to an agreement on a claims process and administrator. The Settlement Agreement was finalized and signed by the Parties in July 2023. *Id*. ¶13.

---

[1] The Joint Declaration previously filed with the Court on July 20, 2023 as Dkt 46.

### C. Settlement and Preliminary Approval

After a settlement was reached, the parties proceeded with seeking approval of the settlement from the Court. On July 20, 2023, Plaintiffs filed an unopposed motion for preliminary approval, asking the Court to preliminarily approve the Class settlement, appoint KCC, LLC ("KCC") as the Settlement Administrator and order that notice commence, appoint Plaintiffs as class representatives, appoint Plaintiffs' counsel as Class Counsel, stay the case pending final approval, and schedule a final approval hearing. On September 25, 2023, the Court granted Plaintiffs' motion for preliminary approval, ordering that class notice commence, that Plaintiffs file their fee and service award application within 14 days of the objection and opt-out deadline (which is December 26, 2023), and set the final approval hearing for January 25, 2024, at 2:00 p.m.

## ARGUMENT

### A. Legal Standard Governing the Award of Attorneys' Fees

Rule 23(h) of the Federal Rules of Civil Procedure provides that in a class action settlement, "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Supreme Court has "recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *See United States v. Tobias*, 935 F.2d 666, 667 (4th Cir. 1991) (explaining common fund is an "equitable exception to the "American rule" that parties bear their own costs of litigation"). The common fund doctrine vests the district court holding jurisdiction over the fund to spread the costs of litigation proportionately across all persons

benefited by the suit. *Id*. The Supreme Court has "applied it in a wide range of circumstances as part of [its] inherent authority." *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 104 (2013) (collecting cases).

Class Counsel here has obtained significant results and benefits for the class. Accordingly, and pursuant to the common fund doctrine and the Settlement Agreement, Class Counsel now applies for a total fee award of one-third of the settlement fund, or $291,666.67, and reimbursement of reasonably incurred expenses of $18,281.77. Plaintiffs also request approval of a service award in the amount of $3,000.00 per Plaintiff ($6,000.00 total) for their time and effort in this Action. These requests are reasonable considering the risk undertaken, the work performed, and the results achieved, and are consistent with similar awards approved in this Circuit. The Settlement Agreement is the product of skilled and dedicated efforts by Class Counsel through considerable litigation in a case involving complex issues of fact and law. For the reasons that follow, these requests should be approved.

### A. Percentage of the Fund Method is Appropriate

The award of attorneys' fees is within the sound discretion of the trial judge. *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978) (further citation omitted). While the Fourth Circuit has not made obligatory a particular method of determining fees in common fund cases, it has recognized the financial significance of the contingency fee and associated risks. *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 245 (4th Cir. 2010); *Brundle on behalf of Constellis Employee Stock Ownership Plan v. Wilmington Tr., N.A.*, 919 F.3d 763, 786 (4th Cir. 2019), *as amended* (Mar. 22, 2019) ("courts routinely impose enhanced common fund awards to compensate counsel for litigation risk at the expense of beneficiaries who do not shoulder this risk.").

In a class action settlement, awards are made either under the "lodestar method, the percentage of the fund method, or a combination of both." *Hall v. Higher One Machines, Inc.*, No. 5:15-CV-670-F, 2016 U.S. Dist. LEXIS 131009, at *20 (E.D.N.C. Sept. 26, 2016); *Phillips v. Triad Guaranty Inc.*, No. 1:09CV71, 2016 U.S. Dist. LEXIS 60950, at *5 (M.D.N.C. May 9, 2016) ("Courts either use the lodestar method, the percentage of the fund method, or a combination of both.").

"The percentage method has overwhelmingly become the preferred method for calculating attorneys' fees in common fund cases." *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 758 (S.D.W. Va. 2009) (collecting cases). "As its name implies, the percentage of fund method provides that the court award attorneys' fees as a percentage of the common fund" while "lodestar method requires the court to "determine the hours reasonably expended by counsel that created, protected, or preserved the fund[] then to multiply that figure by a reasonable hourly rate." *Phillips*, 2016 U.S. Dist. LEXIS 60950, at * 6 (citations and quotations omitted).

The percentage-of-the-fund method provides a strong incentive to plaintiff's counsel to obtain the maximum possible recovery in the shortest time possible under the circumstances by removing the incentive, which occurs under the lodestar method, for class counsel to "over-litigate" or "draw out" cases in an effort to increase the number of hours used to calculate their fees. *See Jones*, 601 F. Supp. 2d at 759; *see also Ferris v. Sprint Communs. Co. L.P.*, Civil Action No. 5:11-cv-00667-H, 2012 U.S. Dist. LEXIS 198702, at *6 (noting that the percentage method "better aligns the interests of class counsel and class members because it ties the attorneys' award to the overall result achieved rather than the hours expended by the attorneys"); *Teague v. Bakker*, 213 F. Supp. 2d 571, 584 (W.D.N.C. 2002) ("[A]n award of attorneys' fees from a common fund

depends on whether the attorneys' specific services benefited the fund—whether they tended to create, increase, protect or preserve the fund.").

Under the percentage method, the attorney fee award is calculated using the gross amount of benefits provided to class members, including administrative costs, attorneys' fees and expenses. *See Ferris*, 2012 U.S. Dist. LEXIS 198702, at *7-8. And in federal courts in North Carolina, it is common to award the percentage-of-recovery method. *See In re Wachovia Corp. ERISA Litig.*, No. 3:09cv262, 2011 U.S. Dist. LEXIS 123109, at *15 (W.D.N.C. Oct. 24, 2011) ("The majority of courts have endorsed the percentage method for calculating attorneys' fee awards in common fund cases").

In the Fourth Circuit, fees constituting one-third of the settlement are reasonable. *Chrismon v. Pizza*, No. 5:19-CV-155-BO, 2020 U.S. Dist. LEXIS 119873, at *12 (E.D.N.C. July 7, 2020) (collecting cases). To be sure, attorneys' fees in common fund cases typically reflect "around one-third of the recovery."[2] Accordingly, Class Counsel's requested attorneys' fee (one-third of the settlement fund) here is typical in common fund cases.

B. <u>**Factors Weigh in Favor of the Requested Fees**</u>

The Fourth Circuit has not required specific factors for consideration in a common fund case. There are two sets currently deployed in this Circuit, *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974) (adopted in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978))[3] and *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 261 (E.D. Va. 2009). Both

---

[2] *See* 5 NEWBERG ON CLASS ACTIONS § 15:73 (5th ed. 2016) (noting that a "33% figure provides some anchoring for the discussion of class action awards [to counsel]" and that "many courts have stated that … fee award in class actions average around one-third of the recovery."); *accord* Theodore Eisenberg & Geoffrey Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, 1 J. OF EMPIRICAL LEGAL STUDIES, 27, 31, 33 (2004) (finding that courts consistently award 30–33% of the common fund).
[3] The *Johnson* factors are as follows:

focus on the reasonableness of the fees and many of the factors overlap. This district has used the *In re Mills* factors in the past ((*Speaks v. U.S. Tobacco Coop., Inc.*, 324 F.R.D. 112, 155 (E.D.N.C. 2018)), which support the fee request here: "(1) the results obtained for the [c]lass; (2) objections by members of the [c]lass to the settlement terms and/or fees requested by counsel; (3) the quality, skill, and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) public policy; and (7) awards in similar cases." *In re Mills Corp. Sec. Litig.*, 265 F.R.D. at 261.

### 1. Class Counsel Achieved Excellent Results

The most critical factor in determining the reasonableness of an attorney fee award is "the degree of success obtained." *McDonnell v. Miller Oil Co.*, 134 F.3d 638, 641 (4th Cir. 1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). The results achieved and benefits conferred in this case is an incredible result, with Defendant agreeing to establish a $875,000 non-reversionary common fund from which the following benefits will be paid:

- 3-years of credit monitoring with a $1 million in identity theft protection insurance at an estimated retail value of approximately $22,402,008 ($9/month x 36 months x 69,142 Class Members)—aimed at protecting Class Members from future harm caused by the breach.

- Up to $10,000 in unreimbursed economic losses and lost time (up to $250 per Class Member) that Class Members have already incurred.

- A $100 Alternative Cash Payment requiring no documentation, only a valid claim, in lieu of the other settlement benefits.

---

(1) the time and labor required in the case, (2) the novelty and difficulty of the questions presented, (3) the skill required to perform the necessary legal services, (4) the preclusion of other employment by the lawyer due to acceptance of the case, (5) the customary fee for similar work, (6) the contingency of a fee, (7) the time pressures imposed in the case, (8) the award involved and the results obtained, (9) the experience, reputation, and ability of the lawyer, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship between the lawyer and the client, and (12) the fee awards made in similar cases.

These benefits reflect an enormous success given the circumstances, and directly address the damages claimed by Plaintiffs and the Class in this action by reimbursing them for out-of-pocket losses and lost time stemming from the breach, providing the opportunity to protect their identity in the future. The size of the fund and the number of persons benefitting from the Settlement also weigh in favor of the reasonableness of the fees requested. The result here is all the more extraordinary in light of the very real litigation risks faced by Plaintiffs in this matter, given that class actions in general are inherently risky and the continuously developing law on data breaches. The Court need look no further than the motion to dismiss filed by Defendant here (Dkt.. 20 and Dkt. 21) to see that the litigation risks in this case were substantial, and present at every stage of the litigation. Further, the Settlement benefits are available to Class Members immediately, rather than years from now which would be the case absent settlement. The amount at issue and the results justifies the requested award.

   2. *Quality, Skill and Experience of the Attorneys*

Proper case management and effective representation in any complex class action, particularly one with novel and unique legal issues, require the highest level of experience and skill. *Edmonds v. United States*, 658 F. Supp. 1126, 1137 (D.S.C. 1987) ("prosecution and management of a complex [] class action requires unique legal skills and abilities."). This case was certainly no different.

As previously stated in their Joint Declaration, Class Counsel are experienced in class actions, having settled hundreds among them, including numerous data breach matters. Joint Dec. ¶21-39. Indeed, Class Counsel have developed a practice devoted to data breach matters and are experienced in assessing the issues affecting them. In order to confer such substantial benefits on Class Members, Class Counsel analyzed and developed the various legal theories and causes of

9

action, conducted discovery, and engaged in motion practice. Borrelli Decl. ¶¶3-5. Through this extensive work and diligent negotiation, Class Counsel was able to evaluate the strengths and weaknesses of various claims and arrive at a hard-fought but fair resolution of this matter. *Id*. ¶¶6-8. All told, Class Counsel demonstrated skill and dedication in zealously litigating the case. *Id*. ¶9

As the Joint Plaintiffs' Counsel Declaration shows, the parties' settlement tracks with data breach settlements across the country and offers significant benefits to the Settlement Class. *Id*. ¶15. Class Counsel were able to utilize their skills to obtain this highly valuable settlement that provides immediate benefits to the Settlement Class to address their injuries resulting from the data breach in lieu of the parties spending time and money in contested litigation. As a result, this factor justifies the fee request.

### 3. Genuine Risk of Non-Recovery

Plaintiffs and Class Counsel faced the genuine and ever-present risk of zero recovery in the case, like all cases on a contingency fee basis. Data breach cases are, by nature, particularly risky and expensive. Such cases also are innately complex. *See, e.g., In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 118209, at *240 (N.D. Ga. Mar. 17, 2020) (recognizing the complexity and novelty of issues in data breach class actions); *Gordon v. Chipotle Mexican Grill, Inc.*, Civil Action No. 17-cv-01415-CMA-SKC, 2019 U.S. Dist. LEXIS 215430, at *3 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex."); *id.* ("This field of litigation is evolving; there is no guarantee of the ultimate result."). This case is no exception to that rule. It involves 69,142 class members, complicated and technical facts, and a well-funded and motivated defendant.

Class Counsel, who took this matter on contingency, faced numerous challenges. Courts have recognized that such risk deserves extra compensation and is a critical factor in

determining the reasonableness of a fee. *See, e.g. Stocks v. Bowen*, 717 F. Supp. 397, 402 (E.D.N.C. 1989); *Gilbert LLP v. Tire Eng'g & Distribution, Ltd. Liab. Co.*, 689 F. App'x 197, 201 (4th Cir. 2017); *In re Dun & Bradstreet Credit Svcs. Cons. Lit.*, 130 F.R.D. 366, 373 (S.D. Ohio 1990); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd,* 889 F.2d 21 (11th Cir. 1990); *In re Cont. Ill, Sec. Lit.,* 962 F.2d 566, 569 (7th Cir. 1992). Thus, the existence of these issues, which were issues of first impression, justifies the requested fee.

        4. *Fees in Similar Cases*

As evidenced above, the attorneys' fee requested in this case falls well within the range of common fund attorney fee requests in this circuit and nationwide. *See Kruger v. Novant Health, Inc.*, No. 1:14CV208, 2016 U.S. Dist. LEXIS 193107, at *7 (M.D.N.C. Sept. 29, 2016) (noting that a "one-third fee is consistent with the market rate" in ERISA class action); *Scott v. Family Dollar Stores, Inc.*, No. 3:08-cv-00540-MOC-DSC, 2018 U.S. Dist. LEXIS 41908, at *15 (W.D.N.C. Mar. 14, 2018) (awarding one-third of the settlement fund plus reimbursement of costs); *Brown v. Lowe's Companies, Inc.*, No. 5:13-CV-00079-RLV-DSC, 2016 U.S. Dist. LEXIS 192451, at *11 (W.D.N.C. Nov. 1, 2016) (finding a one-third attorneys' fee reasonable in light of the results obtained, is consistent with Fourth Circuit precedent); *City Nat. Bank v. Am. Commonwealth Fin. Corp.*, 657 F. Supp. 817, 822 (W.D.N.C. 1987) (approving attorney's fee award of one-third of approximately $1.3 million class recovery); *Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*, No. 3:08-cv-00271-JFA, 2012 U.S. Dist. LEXIS 86474, at *22-23 (D.S.C. June 22, 2012) ("A total fee of one-third of the class settlement for all work performed and to be performed in this case is well within the range of what is customarily awarded in settlement class actions. An award of fees in this range for work performed in the creation of a settlement fund has been held to be reasonable by many federal courts") (citations omitted). Here, Class

Counsel's fee request amounting to one-third of the settlement fund is squarely in line with the typical amount awarded in similar cases.

> 5. *No Objections to the Settlement or the Requested Attorneys' Fees and Service Awards.*

The number of objections to a settlement provides insight into how class members view a settlement, and thereby assist the Court in making a determination as to the reasonableness of the requested attorneys' fee award. As of the date of this filing, neither Plaintiffs' Counsel, nor the Settlement Administrator has received an objection to the settlement or the request for attorneys' fees. Accordingly, Class Counsel's fee request enjoys virtually unanimous support from the Settlement Class Members.

### C. <u>Class Counsel's Expenses are Reasonable</u>

Federal Rule of Civil Procedure 23(h) allows a court approving a class settlement to "award reasonable...nontaxable costs that are authorized by law or by the parties' agreement." Accordingly, courts in the Fourth Circuit allow plaintiffs to recover "reasonable litigation-related expenses as part of their overall award." *Decohen*, 299 F.R.D. at 483 (citation omitted). Recoverable costs may include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel,* 852 F.2d 762, 771 (4th Cir. 1988). "Litigation expenses such as supplemental secretarial costs, copying, telephone costs and necessary travel are integrally related to the work of the attorney and the services for which outlays are made may play a significant role in the ultimate success of litigation…." *Daly v. Hill*, 790 F.2d 1071, 1083 (4th Cir. 1986).

Class Counsel requests that the Court reimburse $18,281.77 in reasonable expenses and costs incurred in the prosecution of this litigation.[4] These expenses and costs were incurred in the prosecution of Plaintiffs' case and in protecting the interests of the putative class, and include filing fees, mediation costs, expert costs, and postage and copying costs. *See* Borrelli Decl., ¶9. Class Counsel's request for costs and expenses should be approved as fair and reasonable given that counsel has a strong incentive to keep costs and expenses at a reasonable level due to the high risk of no recovery when the fee is contingent.

### D. The Requested Service Awards are Reasonable

Service awards are "routinely approved" in class actions to "encourage socially beneficial litigation by compensating named plaintiff for their expenses on travel and other incidental costs, as well as their personal time spent advancing the litigation on behalf of the class and for any personal risk they undertook." *Kay* Co., 749 F. Supp. 2d at 472; *Berry v. Schulman*, 807 F.3d 600, 613 (4th Cir. 2015) (Service awards compensate the class representative for work done on behalf of the class and make up for financial risk undertaken in bringing the action). Serving as a class representative "is a burdensome task and it is true that without class representatives, the entire class would receive nothing." *Id*. at 473; *See also Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

Defendant agreed not to object to a service award for Plaintiffs in the amount of $3,000 each ($6,000 in total) in recognition of the time and effort personally invested in the case. The requested service award is reasonable, commensurate with their efforts in the litigation, and is within the scope of awards granted in this circuit. *See In re: Lumber Liquidators Chinese-*

---

[4] This amount includes $16,218.77 already incurred along with an estimated $2,000 for costs associated with the final approval hearing.

*Manufactured Flooring Durability Mktg.*, No. 1:15-md-2627 (AJT/TRJ), 2020 U.S. Dist. LEXIS 181103, at *91 (E.D. Va. Sept. 4, 2020) (granting service award of $5,000); *Speaks v. U.S. Tobacco Coop., Inc.*, 2018 U.S. Dist. LEXIS 26597, at *9 ($10,000 award, and collecting cases); *Manuel v. Wells Fargo Bank, Nat'l Ass'n*, No. 3:14cv238 (DJN), 2016 U.S. Dist. LEXIS 33708, at *17 n.3 (E.D. Va. Mar. 15, 2016) ("Various studies have found that the average incentive award per plaintiff ranged from $9,355 to $15,992." *citing* Newberg on Class Actions § 17.8 (5th ed.)). The requested service awards should be granted.

## CONCLUSION

For the reasons above, Plaintiffs request that, as part of final approval of the Settlement, the Court grant Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Award.

Dated: December 12, 2023         TURKE & STRAUSS LLP

By: */s/ Raina C. Borrelli*
Raina C. Borrelli (*pro hac vice*)
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, WI 53703
Telephone: (608) 237-1775
Facsimile: (608) 509-4423
raina@turkestrauss.com

Scott C. Harris
MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC
N.C. Bar No.: 35328
900 W. Morgan Street
Raleigh, North Carolina 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
sharris@milberg.com

David K. Lietz (*pro hac vice*)
MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC

14

5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052
(t) 202.744.1795
(f) 202.686.2877
dlietz@milberg.com

Martin A. Ramey
Joel R. Rhine
RHINE LAW FIRM, P.C.
1612 Military Cutoff Road, Suite 300
Wilmington, NC 28403
Telephone: (910) 772-9960
mjr@rhinelawfirm.com
jrr@rhinelawfirm.com

*Class Counsel and Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

I, Raina C. Borrelli, hereby certify that on December 12, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 12th day of December, 2023.

        TURKE & STRAUSS LLP

        By: */s/ Raina C. Borrelli*
            Raina C. Borrelli
            raina@turkestrauss.com
            TURKE & STRAUSS LLP
            613 Williamson St., Suite 201
            Madison, WI 53703
            Telephone: (608) 237-1775
            Facsimile: (608) 509-4423