**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | |
|---|---|
| CHRISTOPHER LAMIE and AMABEL LIN, on behalf of themselves and all others similarly situated, | Case No. 3:22-cv-00307-FDW-DCK |
| Plaintiffs, | Judge Frank D. Whitney |
| v. | |
| LENDINGTREE, LLC; | |
| Defendant. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs Christopher Lamie and Amabel Lin, individually and behalf of others similarly situated ("Plaintiffs"), hereby submit their memorandum of law in support of their Motion for Final Approval of Class Action Settlement.

## I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23(e)(2) ("Rule 23") and this Court's September 25, 2023 Order Granting Preliminary Approval of Class Action Settlement ("Prelim. Approval Order," ECF 49), Plaintiffs respectfully seek final approval of their class action Settlement[1] with Defendant LendingTree, LLC, ("LendingTree," and together

---

[1] Unless otherwise indicated, capitalized terms used in this Memorandum have the same meanings as in the Class Action Settlement Agreement and Release (the "Settlement Agreement" or "SA"). ECF 45-1.

with Plaintiffs, the "Parties"). *See* Fed. R. Civ. P. 23(e)(2). The Settlement resolves all claims against LendingTree on behalf of approximately 68,875[2] Class Members whose personally identifiable information ("PII") was potentially compromised in the February 2022 Data Incident involving LendingTree's website code.

Through extensive arms'-length negotiations, the Parties reached a Settlement that provides for immediate and significant benefits for the Class. *See* Joint Declaration of Plaintiffs' counsel Supporting Motion for Preliminary Approval of Class Action Settlement ("Joint MPA Decl.") at ¶¶ 11,16 (ECF 46). The Settlement is the result of hard-fought negotiations between experienced counsel who had a comprehensive understanding of the strengths and weaknesses of each Party's claims and defenses. *See id.* ¶¶ 10-19. If approved, the Settlement will provide Class Members with the precise relief this lawsuit was filed to obtain.

Specifically, the Settlement negotiated on behalf of the class provides for the ability to claim four significant, meaningful categories of relief from the $875,000 non-reversionary Settlement Fund: (1) three-years of credit monitoring services; (2) reimbursement for lost time (up to 10 hours at $25 per hour), and; (3) reimbursement for unreimbursed economic losses up to $10,000. The fourth benefit is a $100 cash payment (adjusted on a *pro rata* basis) as an alternative to all other benefits. SA ¶ 63.

Class Counsel zealously prosecuted Plaintiffs' claims, achieving the Settlement Agreement only after a hard-fought motion to dismiss, formal discovery and work with

---

[2] This number is less than the number at preliminary approval based upon de-duplication of the Class List during the preparation for sending notice to the Class.

experts, extensive investigation and negotiations, and months of work finalizing the Settlement Agreement and associated exhibits. After this Court granted preliminary approval, the Claims Administrator—with the help of the Parties—disseminated Notice to the Class and implemented the user-friendly claims process that the Court approved. Individual notice was provided directly to Class Members via first class mail. Notice was sent to 100% of the Settlement Class, and reached 99.27% of the Class, easily meeting Rule 23(c)(2)(B) and due process standards. *See* Declaration of Zach Cooley of KCC in Connection with Final Approval of Settlement ("KCC Decl."), ¶ 7, attached hereto as **Exhibit 1**; Fed. R. Civ. P. 23(c)(2)(B). The Notice provided each Settlement Class Member with information regarding how to reach the Settlement Website, make a Claim, and how to opt-out or object to the Settlement.

The reaction from Settlement Class Members to the Settlement is resoundingly positive. The deadline for Settlement Class Members to opt-out or object to the Settlement was December 26, 2023. Only three individuals requested exclusion from the Settlement, and there were no objections to the Settlement or Plaintiffs' Motion for Attorneys' Fees, Costs, Expenses, and Service Awards to Class Representatives, filed on December 12, 2023. *See* KCC Decl. ¶¶ 11-12. By contrast, as of January 10, 2024, 5,118 Claims have been submitted, representing 7.43% of the Class. *See* KCC Decl. ¶ 10.  The Claims Deadline is January 23, 2024, meaning the totals will likely be even higher at the time of the Final Fairness Hearing on January 25, 2024.

The Settlement delivers tangible, immediate benefits to Settlement Class Members addressing the potential harms of the Data Incident, without protracted and inherently risky

litigation. It delivers a fair and adequate resolution for the Class and merits final approval. Accordingly, for the reasons set forth herein, Plaintiffs respectfully request this Court grant their Motion for Final Approval of Class Action Settlement ("Motion for Final Approval"), as well as Plaintiffs' Motion for Approval of Attorneys' Fees, Costs, Expenses, and Service Awards ("Motion for Attorneys' Fees"), filed on December 12, 2023. (ECF 50).

## II.    INCORPORATION BY REFERENCE

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiffs refer this Court to and hereby incorporate Plaintiffs' Memorandum in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement ("Memorandum in Support of Motion for Preliminary Approval"), filed on July 20, 2023, ECF 45) and the accompanying exhibits filed in conjunction therewith. Plaintiffs also incorporate Plaintiffs' Motion for Approval of Attorneys' Fees, Expenses, and Service Awards and supporting declaration. ECF 50 and 51.

## III.    THE SETTLEMENT TERMS

As described in the Settlement Agreement, the settlement benefits are substantial, and will be paid from a $875,000 non-reversionary settlement fund.

i. *The Settlement Class*

The Settlement Class is defined as follows:

> All individuals whose Private Information was compromised or potentially compromised in the Data Security Incident.

Excluded from the Settlement Class are: (1) the judge presiding over this Action, and members of his direct family; (2) the Defendant, its subsidiaries, parent companies,

successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, and employees; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline. SA ¶ 50.

        ii. *The Settlement Benefits*

The following benefits are available to Settlement Class Members who submit valid and timely claim forms.

a. Credit Monitoring: All Settlement Class Members are eligible to enroll in three (3) years of Credit Monitoring Services, regardless of whether the Settlement Class Member submits a claim for reimbursement of Unreimbursed Economic Losses or Lost Time.

b. Compensation for Unreimbursed Economic Losses: Each Class Member may claim up to a total of $10,000 per person who is a member of the Settlement Class, upon submission of a claim and supporting documentation, for unreimbursed monetary losses incurred as a result of the Data Security Incident

c. Compensation for Lost Time: Class Members may claim compensation for up to 10 hours of lost time, at $25.00/hour ($250 cap), for time spent mitigating the effects of the Data Security Incident. Class Members may submit claims for up to 10 hours of lost time with only an attestation demonstrating that they spent the claimed time responding to issues raised by the Data Security Incident. Claims for lost time can be combined with claims for Unreimbursed Economic Loss but are subject to the $10,000 cap.

d. $100 Cash Compensation (Alternative Cash Payment): Settlement Class Members can elect to make a claim for a $100 Alternative Cash Payment in lieu of all the other settlement benefits outlined above. To receive this benefit, Settlement Class Members must submit a valid claim form, but no documentation is required to make a claim. The amount of the Alternative Cash Payments will be increased or decreased on a *pro rata* basis, depending upon the number of valid claims filed and the amount of funds available for these payments.

In addition to the Class Relief, all costs for administration and notice will be paid from the Settlement Fund. Also, Plaintiffs have previously moved for an award of attorneys' fees, expenses, and service awards, also to be paid from the non-reversionary Settlement Fund. *See* ECF 50, 51.

## IV.  NOTICE AND CLAIMS ADMINISTRATION

### 1.  CAFA Notice.

KCC began its work by providing notice of the proposed Settlement pursuant to the Class Action Fairness Act 28 U.S.C. §1715(b) ("the CAFA Notice"). KCC Decl. ¶ 3. At LendingTree's counsel's direction, on October 5, 2023, KCC sent the CAFA Notice, via First-Class Certified Mail, to (i) the Attorney General of all states and territories, as well as the Attorney General of the United States. *Id.*  A copy of the CAFA Notice cover letter is attached hereto as Exhibit A to KCC's Declaration.

### 2.  Direct Mail Notice.

KCC received the Class List on October 2, 2023. *Id.* ¶ 5. The list contained 68,986 full names, and last known mailing addresses. *Id.*  KCC undertook several steps to review the records that were provided and compiled the Class List. *Id.* To ensure that the Notice of Proposed Settlement (in Postcard format) would be deliverable to Settlement Class Members, KCC also ran the Class List through the USPS's National Change of Address ("NCOA") database and updated the Class List with address changes received from the NCOA. *Id.* ¶ 5.

On October 25, 2023, KCC caused 68,875 copies of the Notice of Proposed Settlement to be mailed to the Settlement Class and the Settlement Subclass via First Class

Mail.[3] *Id.* ¶ 6. Since mailing of the notice, the U.S. Postal Service ("USPS") informed KCC that 681 copies of the Notice of Proposed Settlement were returned by the USPS. KCC was able to find forwarding addresses for 182 of these. These notices were re-mailed by KCC to the updated address. *Id.* at ¶ 7. After remailings, notice reached 99.27% of the Class.

<ol start="3" style="list-style-type: none;">
<li>3. <u>Settlement Post Office Box, Website, Toll-Free Number, and Email Address.</u></li>
</ol>

In addition to the individual direct notice provided, KCC created a dedicated settlement website, *Id.* ¶ 8. The Settlement Website "went live" on October 25, 2023, and contains details of the Settlement, including the Settlement benefits, contact information for Class Counsel, how to calculate and make a claim, and the procedure for how to opt out of or object to the Settlement, Frequently Asked Questions, all related Court-documents, and a copy of the Long Form Notice.[4] *Id.* The Settlement Website provides Settlement Class Members with the opportunity to file Claim Forms online as well as downloadable versions of the claim form. *Id.* As of January 9, 2024, the Settlement Website received visits from 2,753 individuals and 4,625 page views. *Id.* ¶ 8. The Settlement Website will remain active for at least six months after the Effective Date of the Settlement.

KCC also established a toll-free help line ("Toll-Free Number"), with an Interactive Voice Response ("IVR") system, to provide Settlement Class Members with additional information about the settlement, which is available 24 hours per day, seven days per week. *Id.* ¶ 9. Settlement Class Members can call and interact with the IVR system, which

---

[3] A copy of the Notice of Proposed Settlement is attached to the KCC Declaration as Exhibit C.
[4] A copy of the Long Form Notice is attached to the Settlement Agreement (ECF 45-1) as Exhibit B.

provides important settlement information and offers the ability to leave a voicemail message to address specific requests or issues. *Id.* As of January 10, 2024, the IVR has received 166 calls for a total of 600 minutes. *Id.*

Finally, KCC established a designated P.O. Box to receive requests for exclusion, claims forms, objections, and correspondence from Settlement Class Members. *See Id.* The P.O. Box address appears prominently in all Notices and in multiple locations on the Settlement Website.

    4.    <u>Claims.</u>

The timing of the claims process was structured to ensure that all Settlement Class Members have adequate time to review the terms of the Settlement Agreement, make a claim or decide whether they would like to opt-out or object. As of January 10, 2024, KCC received 5,118 timely filed claims. *Id.* ¶ 10. Class Members have until January 23, 2024, to file claims. KCC is still in the process of reviewing and validating claim forms. *Id.* KCC will provide a final claims report to the Parties once it processes all Claim Forms received by the deadline for Settlement Class Members to submit claims.

    5.    <u>Requests for Exclusion and Objections.</u>

Settlement Class Members were provided up to and including December 26, 2023— sixty-two days after the Notice Deadline—to object to or to request exclusion from the Settlement. Prelim. Approval Order, ¶¶ 10-11 (ECF 49). Similar to the timing of the Claims Process, the timing with regard to objections and requests for exclusion was structured to give Settlement Class Members sufficient time to access and review the Settlement documents—including Plaintiffs' Motion for Attorneys' Fees, which was filed fourteen

(14) days prior to the deadline for Settlement Class Members to object or exclude themselves from the Settlement. ECF 50. As of January 10, 2024, KCC has received only three (3) timely exclusion requests and no objections to the Settlement. *Id*. ¶¶ 11-12.

## V.    PRELIMINARY APPROVAL

Plaintiffs filed the Motion for Preliminary Approval on July 20, 2023, and the Court entered the Preliminary Approval order on September 25, 2023. ECF Nos. 44, 49. In the Court's Preliminary Approval Order, the Court appointed Plaintiffs Christopher Lamie and Amabel Lynn as Class Representatives pursuant to Rule 23(e)(2)(A) and David Lietz of Milberg Coleman Bryson Phillips Grossman, PLLC and Raina Borrelli of Turke & Strauss LLP as Class Counsel. Rule 23(e)(2)(A); Prelim. Approval Order ¶ 2. The Court also appointed KCC LLC as the Claims Administrator. *Id.* ¶ 6. The Court further approved the forms of notice, which state the amount of attorneys' fees that would be requested, the fact that costs and expenses would be requested, the amount of service awards that would be requested, as well as approved the plan for disseminating notice to the Class. *Id.* ¶¶ 7-8; SA Exs. A-B. Class Members also had until December 26, 2023, to file requests for exclusions and objections, if any. Prelim. Approval Order, ¶¶ 10-11, 17. Class Members also have until January 23, 2024, to make claims. *Id.* ¶ 17. Class Counsel submitted a separate Motion for Attorneys' Fees, filed on December 12, 2023—the Court-ordered deadline to do so. *Id*. In the Court's Preliminary Approval Order, the Court scheduled the Final Approval Hearing in the lawsuit for January 25, 2024, at 2:00 p.m., at which time the Court will determine whether to finally certify the Action, whether to finally approve the Settlement and Settlement Agreement, whether to grant Plaintiffs' Motion for Attorneys'

Fees, Expenses, and Service Awards, whether to dismiss the Lawsuits with prejudice, and whether to enter the final approval order and judgment. ECF 49.

## VI.    LEGAL STANDARD

Plaintiffs bring this motion pursuant to Federal Rule of Civil Procedure 23(e), under which a class action may not be settled without approval of the Court. Fed. R. Civ. P. 23(e). The primary concern is the "protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). The Court may "limit its proceedings to whatever is necessary to aid it in reaching an informed, just and reasoned decision." *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975). If the court concludes that the proposed settlement is "fair, reasonable, and adequate," it will give final approval to the settlement. *In re Red Hat, Inc. Sec. Litig.*, 5:04-CV-473-BR(3), 2010 WL 2710517, at *1 (E.D.N.C. June 11, 2010) (citations omitted).[5] The court begins with a "strong initial presumption that the compromise is fair and reasonable." *S.C. Nat. Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991).

The Court must make a determination as to the fairness, reasonableness, and adequacy of the settlement terms. Fed. R. Civ. P. 23(e)(2); *Manual for Complex Litigation (Fourth)* ("MCL"), § 21.632 (4th ed. 2004). The approval process involves two steps. At the first, or preliminary approval stage, the Court need only find that the settlement is within "the range of possible approval" and warrants notice being issued to the class.

---

[5] Report and recommendation adopted, 5:04-CV-473-BR, 2010 WL 2710446 (E.D.N.C. July 8, 2010).

*Horton v. Merrill Lynch, Pierce, Fenner & Smith*, 855 F. Supp. 825, 827 (E.D.N.C. 1994) (citing *In Re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983)). This first step involves both preliminary certification of the class and an initial assessment of the proposed settlement. *Id.*; *see also See Manual for Complex Litigation*, Sec. 30.41 (3d ed. 1995). It is only after a court has preliminarily approved a settlement, and notice has been provided to the Class, that the court makes a final determination of the fairness, adequacy, and reasonableness of a Settlement.

The primary concern for a court in reviewing a proposed class settlement is to ensure that the rights of class members have received sufficient consideration in settlement negotiations. *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158-59. Approval of a class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001).

Moreover, as the Fourth Circuit has recognized, courts strongly favor and encourage settlements. *See, e.g., United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992) ("It has long been clear that the law favors settlement."). "This is particularly true in class actions" and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g., Six v. LoanCare, LLC*, Case No. 5:21-cv-00451, 2022 WL 16747291, at *3 (S.D. W. Va. Nov. 7, 2022) (slip copy) (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011) and citing *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132,

138 (2d Cir. 1998 (noting the "strong judicial policy in factor of settlements, particularly in the class action context")).

Plaintiffs now ask this Court to grant final approval of the proposed Settlement as fair, adequate, and reasonable so that Plaintiffs and Settlement Class Members may begin to appreciate the monetary and non-monetary benefits of the Settlement.

## VII.   ARGUMENT

### A. The Claims Administrator Provided Notice Pursuant to this Court's Preliminary Approval Order and Satisfied Federal Rule of Civil Procedure 23 and Due Process.

To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). While individual notice should be provided where class members can be located and identified through reasonable effort, notice may also be provided by U.S. Mail, electronic, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B). Under Rule 23(c)(2)(B), the notice must:

> (i) clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner

for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

Here, the direct mail Notice of Proposed Settlement (in Postcard format) is the gold standard and is consistent with Notice programs approved by other courts. *See, e.g., Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 472 (W.D. Va. 2011) (approving notice where individual direct notice mailed by fourth-class mail and settlement website and toll-free number established); *Smith v. Res-Care, Inc.*, Civil Action No. 3:13-5211, 2015 WL 6479658, at *4 (S.D. W. Va. Oct. 27, 2015) (approving notice where individual direct notice mailed and settlement website and toll-free number established); *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 479 (D. Md. 2014) (finding direct mail Notice to each class members' last known address—and a second notice if the first was undeliverable—was the best practicable and satisfied notice requirements). The content of the Notice provided adequately informed Settlement Class Members of the nature of the action, the definition of the class, the claims at issue, the ability of a class member to object or exclude themselves, and/or enter an appearance through an attorney, that the court will exclude any class member who requests exclusion, and the binding effect of final approval and class judgment. *See* SA Exs. A-B; ECF 45-1. The Notice utilized clear and concise language that is easy to understand, and the Notice was organized in a way that allowed Settlement Class Members to easily find any section that they may be looking for. Thus, it was substantively adequate.

Moreover, the Claims Administrator—with the assistance of the Parties—has taken all necessary measures to ensure notice reached as many of the Settlement Class Members as possible. Direct notice was sent to 100% of the Settlement Class Members, reaching 99.27% of the Settlement Class. KCC Decl. ¶ 7. Such notice complies with the program approved by this Court in its Preliminary Approval Order, is consistent with (and well above) Notice Programs approved in the Fourth Circuit and across the United States, is considered a "high percentage," and is within the "norm." *See* Barbara J. Rothstein & Thomas E. Willging, Fed. Jud. Ctr., "Managing Class Action Litigation: A Pocket Guide or Judges", 27 (3d Ed. 2010); *Smith*, Civil Action No. 3:13-5211, 2015 WL 6479658, at *5 (approving a "92.13% effective delivery rate to identified Class Members" as an "acceptable, and event exceptional, rate"); *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 236 (S.D. W. Va. 2005) (approving publication notice rate of approximately 80% of the U.S. population where Settlement Class Members were exposed to notice an average of 2.6 times throughout notice program).

### B. The Settlement Class Should be Finally Certified for Settlement Purposes.

As Plaintiffs set forth at length in their Motion for Preliminary Approval, the proposed Settlement Class satisfies all of the requirements of Rule 23. *See* Fed. R. Civ. P. 23(a), (b)(3). The Court preliminarily certified the Settlement Class in its Preliminary Approval Order. Prelim. Approval Order, ECF 49, ¶ 1. Nothing has occurred that would change the Court's previous determination that Plaintiffs satisfy the requirements under Rule 23. Fed. R. Civ. P. 23(a), (b)(3). Specifically, the Settlement Class still meets the requirements of numerosity, commonality, typicality, adequacy of representation,

predominance, and superiority under Rule 23(a) and (b)(3). *Id.* Thus, the Court should finally certify the Settlement Class for settlement purposes.

**C. The Settlement is Fair, Reasonable, and Adequate and Should Be Approved.**

1. <u>The Terms of the Settlement Warrant Final Approval under the *Jiffy Lube* Test.</u>

To determine final approval, the Fourth Circuit "adopted a bifurcated analysis, separating factors relating to the 'fairness' of the settlement from those relating to its 'adequacy'." *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 828 (E.D.N.C. 1994). [6] Fairness focuses on whether the proposed settlement was the product of good-faith bargaining at arm's length, free from collusion. *Jiffy Lube*, 927 F.2d at 159. Adequacy "focuses on whether the consideration provided to the class members is sufficient." *Beaulieu v. EQ Indus. Servs., Inc.*, No. 5:06-CV-00400BR, 2009 WL 2208131, at *23 (E.D.N.C. July 22, 2009). The proposed settlement is "not to be judged against a hypothetical or speculative measure of what might have been achieved by negotiators" in the best of all possible deals. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (affirming district court's final approval of class settlement).

---

[6] "In the Fourth Circuit, the Rule 23(e)(2) analysis has been condensed into the two-step *Jiffy Lube* test which examines the fairness and adequacy of the settlement." ***Skochin v. Genworth Fin., Inc.***, Civil Action No. 3:19-cv-49, 2020 WL 6697418, at *2 (E.D. Va. 2020) (slip copy); *In re Lumber Liquidators Chinese-Manufactured Flooring Prods., Sales Pracs. & Prods. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020) ("[B]ecause our factors for assessing class action settlement almost completely overlap with the new Rule 23(e)(2) factors, the outcome … would be the same under both our factors and the Rule's factors."); *see also Yost v. Elon Prop. Mgmt. Co.-Lexford Pools 1/3, LLC*, Civil Action No. ELH-21-1520, 2023 WL 185178, at *4 (D. Md. Jan. 13, 2023) (same) (granting final approval after evaluating adequacy and fairness of settlement under *Jiffy Lube* factors).

### 2. The Settlement Terms Meet the *Jiffy Lube* Adequacy Requirement.

In analyzing the adequacy of a proposed settlement, the Court should consider the *Jiffy Lube* factors: (1) the relative strength of the case on the merits; (2) any difficulties of proof or strong defenses the plaintiff and class would likely encounter if the case were to go to trial; (3) the expected duration and expense of additional litigation; (4) the solvency of the defendants and the probability of recovery on a litigated judgment; and (5) and the degree of opposition to the proposed settlement. *Beaulieu*, 2009 WL at *26 (citing *Jiffy Lube*, 927 F.2d at 158; *Horton*, 855 F. Supp. at 829–30).

> ### a. The Relative Strength of the Case on the Merits, the Risks of the Case if the Case Were to Go to Trial, and the Duration and Expense of Additional Litigation Weigh in Favor of Final Approval.

By their very nature, because of the many uncertainties of outcome, difficulties of proof, and lengthy duration, class actions readily lend themselves to compromise. *See S.C. Nat'l Bank v. Stone*, 749 F. Supp. At 1423 (D. S.C. 1990) (noting that settlement spares litigants the uncertainty, delay, and expense of a trial and appeals while simultaneously reducing the burden on judicial resources). Here, the first three *Jiffy Lube* factors are closely related, and weigh in favor of final approval of the proposed settlement.

The value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain. While Plaintiffs believe their case is strong, there would be substantial risk in litigating the case. Data breach cases are, by nature, especially risky and expensive. Such cases also are innately complex. *See, e.g., In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800, 2020 WL 256132, at *32-33 (N.D. Ga. Mar. 17, 2020) (recognizing the complexity and novelty of issues in data breach class

actions); *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex.") ("This field of litigation is evolving; there is no guarantee of the ultimate result."). This case is no exception to that rule. It involves 68,875 class members, complicated and technical facts, and a well-funded and motivated defendant.

There are numerous substantial hurdles Plaintiffs would have to overcome before the Court might find a trial appropriate, including a motion to dismiss, class certification, and summary judgment. Like any complex class action, data breach cases are challenging and time consuming to litigate, particularly here, where LendingTree disputes Plaintiffs' allegations and denies that it is liable for any harm caused to Plaintiffs from the Data Incident. LendingTree has indicated it will vigorously defend the case. While Plaintiffs believe their claims are strong, success is not guaranteed. Thus, despite Plaintiffs' confidence in the strength of this case, numerous legal issues and factual disputes exist that undermine the certainty of a more favorable outcome for the Settlement Class.

Rather than face this risk and uncertainty, the Settlement allows for Settlement Class Members to obtain benefits within the near future—as opposed to potentially waiting for years—and eliminates the possibility of receiving no benefits whatsoever. *See In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 216 (E.D. Pa. 2014) ("[I]f the parties were to continue to litigate this case, further proceedings would be complex, expensive and lengthy, with contested issues of law and fact …. That a settlement would eliminate delay and expenses and provide immediate benefit to the class militates in favor of approval."). Resolution in the near-term also helps mitigate any harm that the Settlement

Class Members may have suffered by providing access to credit monitoring benefits in the near-term, rather than after prolonged litigation.

Litigating this case to a favorable conclusion will require a considerable amount of time and resources, and weighs in favor of accepting the Settlement now. *See In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) ("Even if Plaintiffs were to succeed on the merits at some future date, a future victory is not as valuable as a present victory. Continued litigation carries with it a decrease in the time value of money, for '[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now.'") (internal citation omitted)).

Here, the monetary relief (an $875,000 non-reversionary common fund) provided for in the Settlement represents a significant and excellent result for the Settlement Class: (1) three-years of credit monitoring services; (2) reimbursement for lost time (up to 10 hours at $25 per hour); (3) reimbursement for unreimbursed economic losses up to $10,000, and; (4) a $100 alternative cash payment in lieu of the other settlement benefits. SA ¶ 63.

Based upon all this relief, this is a sizeable recovery for the Settlement Class and represents real, meaningful benefits for Settlement Class Members.[7] The Settlement

---

[7] These Settlement terms are consistent with, and in fact better than, agreements approved by Courts in other, similar data breach cases. *See, e.g., Mowery v. Saint Francis Healthcare Sys.*, No. 1:20-cv-00013-SPC (E.D. Mo. Dec. 22, 2020) (data breach settlement providing up to $280 in value to Class Members in the form of: reimbursement up to $180 of out-of-pocket expenses and time spent dealing with the data breach; credit monitoring services valued at $100; and equitable relief in the form of data security enhancements;); *Baksh v. IvyRehab Network, Inc.*, No. 7:20-cv-01845 (S.D.N.Y. Jan. 27, 2021) (providing up to $75 per class member out-of-pocket expenses incurred related to the data breach and $20 reimbursement for lost time, with payments capped at $75,000 in aggregate; credit monitoring for claimants; and equitable relief in the form of data security enhancements); *Rutledge, et al. v. Saint Francis Healthcare Sys.*, No. 1:20-cv-00013-SPC (E.D. Mo.) (data breach settlement providing up to $280 in value to Class Members in the form of:

provides benefits that address all potential harms of a data breach without the substantial risks, uncertainties, and duration and expense of continued litigation. Accordingly, the Settlement easily weighs in favor of final approval.

> b. *The Solvency of LendingTree on a Litigated Judgment is Neutral and Does Not Preclude Final Approval.*

There is no evidence that LendingTree is in danger of becoming insolvent in the likelihood of a recovery in Plaintiffs' favor on a litigated judgment. Thus, this factor is neutral in the analysis and does not preclude the Court from granting final approval.

> c. *The Degree of Opposition to the Proposed Settlement.*

The reaction of the Settlement Class to the proposed Settlement has been undeniably positive. As of January 10, 2024, out of the 68,875 Settlement Class Members who were sent notice, KCC received only three (3) timely exclusion requests. KCC Decl. ¶ 11. Moreover, as of January 10, 2024, KCC has received no objections to the Settlement. *Id.* ¶ 12. This is a *de minimis* number of requests for exclusion, and the opt-outs do not undercut the conclusion that the Settlement satisfies the adequacy requirement. *See Skochin v. Genworth Fin., Inc.*, Civil Action No. 3:19-cv-49, 2020 WL 6697418, at *4 (E.D. Va. 2020) (holding that proposed settlement satisfied adequacy requirement with 191 opt outs and 32 objections out of class of 207). "'It is well established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that

---

reimbursement up to $180 of out-of-pocket expenses and time spent dealing with the data breach; credit monitoring services valued at $100; and equitable relief in the form of data security enhancements); *Linnins v. HAECO Ams., Inc.*, No. 16-cv-486, 2018 WL 5312193, at *1-3 (M.D.N.C. Oct. 26, 2018) (settlement included $312,500 claim fund for reimbursement of specified expenses to employees whose PII was alleged disclosed in breach).

the terms of a proposed class settlement action are favorable to the class members.'" *West v. Continental Automotive, Inc.*, Docket No. 3:16-cv-00502-FDW-DSC, 2018 WL 1146642, at *6 (W.D. N.C. Feb. 5, 2018)) (quoting *National Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (collecting cases)). The presumption in favor of final approval applies here with no objection to the Settlement, and a negligible number of opt-outs.

3.    <u>The Settlement Terms Meet the *Jiffy Lube* Fairness Requirement.</u>

The Fourth Circuit has listed four factors that a court should consider in concluding whether a proposed settlement agreement is fair, and reached in good faith and without collusion: (1) the posture of the case at the time it settled; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the relevant experience of counsel. *Beaulieu*, 2009 WL at *24 (citing *Jiffy Lube*, 927 F.2d at 158–59; *Horton*, 855 F. Supp. at 828).

"A proposed class action settlement is considered presumptively fair where there is no evidence of collusion and the parties, through capable counsel, have engaged in arms' length negotiations." *Harris v. McCrackin*, C.A. Nos. 2:03–3845–23, 2:03–3943–23, 2:04–2314–23, 2006 WL 1897038, at *5 (D. S.C. July 10, 2006); *see also ADESSO Homeowners' Ass'n v. Holder Properties, Inc.*, Case No. 3:16-cv-710-JFA, 2017 WL 11272589, at *8 (D. S.C. May 23, 2017) ("[A] proposed class action settlement is considered presumptively fair where there is no evidence of collusion and the parties, through capable counsel, have engaged in arms' length negotiations."). **This presumption is applicable here.**

Here, the posture of the case at the time of settlement was in the wake of the Court's decision on Defendant's motion to dismiss and as the parties were beginning to engage in fact and expert discovery. This is propitious time for settlement, as the Parties can direct their resources towards a possible settlement, as opposed to lengthy and expensive formal discovery and protracted litigation. The Settlement is the result of protracted and intense, arm's-length negotiations between highly experienced attorneys who are familiar with class action litigation—and data breach class actions in particular—and with the legal and factual issues in these cases. *See* Joint MPA Decl. ¶¶ 21-39 and Firm Resumes attached thereto as Exhibits A and B. Before discussing potential settlement, the Parties completed an extensive investigation and exchanged formal discovery—both of which helped them to fully understand the strengths and weaknesses of their claims and defenses and the risks of continued litigation. *Id.* ¶¶ 6, 8. Plaintiffs retained and worked with experts to develop their case for class certification. Id. at ¶ 8. The Parties then participated in a full day of mediation with Hunter Hughes, Esq., a highly talented and sought-after mediator, negotiating at arm's length and communicating their positions through him. *Id.* ¶ 12. This session with Mr. Hughes resulted in an agreement to the principal terms of the Settlement. *Id.* ¶ 11. Following their mediation session, the Parties continued negotiating back and forth for weeks before reaching the particular terms of the Settlement Agreement and associated exhibits. *Id.* ¶ 13. Throughout all negotiations, Settlement Class Counsel and counsel for LendingTree fought hard for the interests of their respective clients, as evidenced by the motion practice in this case. Negotiations were at arms-length, and there is no evidence of collusion.

Accordingly, the Settlement satisfies the *Jiffy Lube* test for fairness and adequacy, and the Settlement should therefore be finally approved by the Court.

## VIII.    CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable settlement that guarantees Settlement Class Members substantial, immediate relief in the form of direct reimbursements for expenses incurred and time spent relevant to the Data Incident, and credit monitoring and identity theft protections. For these and the above reasons, Plaintiffs respectfully request this Court grant their Motion for Final Approval of the Class Action Settlement, finally certify the Settlement Class, and determine that the Notice met the requirements of Rule 23(c)(2)(B) and due process.[8]

Respectfully submitted this 11th day of January 2024.

MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC

*/s/ Scott C. Harris*
Scott C. Harris
N.C. Bar No.: 35328
900 W. Morgan Street
Raleigh, North Carolina 27603
(t): (919) 600-5000/(f): (919) 600-5035
sharris@milberg.com

David K. Lietz (*pro hac vice*)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052
(t) 202.744.1795 / (f) 202.686.2877
dlietz@milberg.com

---

[8] A [Proposed] Final Judgment Approving Class Action Settlement is attached hereto as **Exhibit 2.**

Samuel J. Strauss*
Raina C. Borrelli (*pro hac vice*)
**TURKE & STRAUSS LLP**
613 Williamson St., Suite 201
Madison, WI 53703
T: (608) 237-1775
F: (608) 509-4423
sam@turkestrauss.com
raina@turkestrauss.com

*Class Counsel and Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Scott C. Harris, hereby certify that on January 11, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**

*/s/ Scott C. Harris*
Scott C. Harris
N.C. Bar No.: 35328
900 W. Morgan Street
Raleigh, North Carolina 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
sharris@milberg.com